**Federal National Mortgage Assoc. v. Woody**

*Seymour Kivitz*, for plaintiff.
*Erie L. Frank*, for defendants.

HILL, *J.*, January 14, 1982—Defendants have filed a petition to open or strike off a default judgment and to stay a sheriff's sale.

In this case, defendants entered into a purchase money mortgage loan transaction with National Homes Acceptance Corporation which was secured by a mortgage upon 2832 N. Boudinot Street, Philadelphia; thereafter, the mortgage was assigned to plaintiff, Federal National Mortgage Association (FNMA). On January 28, 1981, FNMA filed a complaint in mortgage foreclosure. On March 5, 1981, a judgment by default was entered against defendants.

## I. PETITION TO STRIKE

Defendants contend that this judgment should be stricken off because the notice of intention to foreclose which a residential mortgage lender such as FNMA need file pursuant to Act of January 30, 1974, P.L. 13, 41 P.S. §403 was defective.

Defendants first contention is that "the notice is

sent by and on the stationery of The Lomas & Nettleton Company instead of FNMA as required by 41 P.S. §403(a)" and that "FNMA is nowhere mentioned in the notice."

Although the "notice of intention to foreclose and accelerate loan balance" is on the stationery of "The Lomas & Nettleton Company" and does not mention "FNMA," it does refer to the "mortgaged premises" as 2832 N. Boudinot Street, Philadelphia, which is the same property referred to in the mortgage attached to the complaint. Furthermore, paragraph 1 of the notice states:

"This company is the holder of the FIRST MORTGAGE (and note) on the above premises, *or is the mortgage service agent* for such holder." (Emphasis added.)

Close scrutiny of §403 of the act fails to reveal any requirement therein that the actual mortgagee be named in the notice. Since this notice makes it clear that Lomas & Nettleton Company is either the mortgagee or the service agent for it and that the payments referred to therein if made to that company would cure the default, it is the opinion of the court that this is sufficient.

Petitioners also contend that "notice fails to clearly and conspicuously state exactly what performance, including what sum of money must be tendered to cure the default" as required in §403(c)(3) of the act. Specifically, petitioners claim in paragraph 10(c) of their petition that "paragraphs 4, 5(b) and 6 of the notice, when read together, misleadingly imply cure can only be made within thirty (30) days and that payment after thirty (30) days will prevent foreclosure and sheriff sale but will leave the entire loan immediately due and payable."

A reading of the notice indicates that this is just not the case. In fact, paragraph 9 of the notice states the exact contrary of this:

"You may CURE DEFAULTS up to three (3) times in any calendar year. Upon cure of a default you will be in the same position as if there had been NO DEFAULT. A default may be cured by ANY-ONE on your behalf."

Nor for the same reason is paragraph 10(c)ii of the petition defective (as contended by defendants).

In paragraph 10(c)iii of their petition, defendants further assert:

"The notice fails to specifically set forth the exact amounts necessary to cure within the thirty (30) days following the notice or the earliest possible date of sheriff sale. While Paragraph 5 of the notice provides a means for calculating the amount owed, this is not 'clear and conspicuous' to the average lay-person."

Actually in paragraph 2 of its notice plaintiff has set forth specifically what sum is due to cure the default as of the date of the notice (i.e. $598.15). Defendants complain because in paragraph 5(a) of the notice plaintiff states that if payment to cure the default is made "after the 1st day of next month," "an additional monthly installment" must be paid "plus an additional late charge if due at time of payment and not included above. A LATE CHARGE is due with each mortgage payment paid more than fifteen (15) days after the due date."

Reference to paragraph 2 of the mortgage document indicates that "a late charge" is not to exceed four percent of the monthly installment. The monthly installment is listed in paragraph 2 of the notice in question as $144.27.

Also, defendants contend that paragraph 5(b) of

the notice which deals with payment made after the date of the notice but before foreclosure proceedings requires added payment of "any title report costs, which amount can be obtained by contacting this office." Similarly paragraph 6 of the notice dealing with payment made after foreclosure proceedings have started up to 1 hour before commencement of the sheriff sale would add a required payment of "reasonable legal fees actually incurred, costs and other sums related to the foreclosure action, which amount can be obtained by contacting this office or our attorney."

No doubt it would have been difficult for plaintiff to give the exact amount of the title report costs, legal fees, "costs and other sums related to " future foreclosure proceedings. While some kind of estimate would have been preferable, this court cannot hold as a matter of law that the reference to plaintiff's attorney for information pertaining to costs not yet incurred at the time of the notice constitute a failure to satisfy §403 of this act.

As concerns the late charges referred to in paragraphs 5 and 6 of the notice, these were not calculated and set forth in the notice as should have been done. Whether the failure to do so constitutes a default in the notice so as to warrant striking off the judgment will be discussed along with the entire question of "late charges" at another point in this opinion.

In paragraph 10(d) of the petition, defendants contend that plaintiff failed to state in the notice that in order to cure the default "defendants need only pay those reasonable and actually incurred costs of foreclosure which are specified in writing" and that this constitutes a violation of 41 P.S. §403(c)(3) and 404(b)(3).

Section 404(b)(3) states that to cure a default a residential mortgage debtor shall:

"(3) Pay or tender any reasonable fees allowed under section 406 and the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment."

Defendants contend that the words "specified in writing" should have been inserted in paragraph 6 of the notice and that failure to do so is a default. This court does not agree.

In paragraph 10(e) of the petition defendants contend:

" . . . the notice misstates the methods by which Defendants' ownership of their home could be terminated in that it states that the residence 'will be' sold at sheriff sale which 'will take place' approximately seven (7) to eleven (11) weeks after service of a Complaint in Mortgage Foreclosure. This misleading suggests that Defendants would have no right or opportunity to contest Plaintiff's right to foreclosure on the property."

The answer to this is that the language in question is not, in fact, misleading and that while the act does require notice as to what is necessary to cure the default there is nothing in it to require plaintiff to inform defendants that they could contest plaintiff's foreclosure proceedings.

Now, as to the question of "late charges." Defendants claim in paragraph 10(b) of the petition that the notice fails clearly and conspicuously to state the nature of the default in that it demands payment of $21.07 for either "late charges" or "advances." An examination of the notice indicates that the $21.07 in question is without question

listed as a "late charge " in paragraph 2, not "advances." However, it is also true that plaintiff has failed to specify how the late charges were calculated. Reference to paragraph 2 of the mortgage document attached to the complaint as an exhibit discloses that plaintiffs are permitted to charge a "late charge" not exceeding four percent of any installment when paid more than fifteen (15) days after the due date thereof . . . " Unfortunately the notice in question is silent as to just how the late charge of $21.07 was arrived at. The most obvious possibility of four months x four percent of $144.27 comes to $22.60. This mystery remains, therefore, unresolved. Of course simple reference to the mortgage itself by defendants would show them that some late charges are due. The act, however, requires clarity and the notice does not comply in this respect as concerns the "late charges" because it is not clear what the monthly late charge was and how the $21.07 was arrived at.

This court is of the opinion, however, that failure by plaintiff to specify exactly how the "late charges" were arrived at is not a basis for striking off the judgment in question.

It is the opinion of the court that this is a situation in which the time-honored maxim of the law "de minimis non curat lex" applies.

In Bristol-Myers Co. v. Lit Bros. Inc., 336 Pa. 81, 6 A. 2d 834 (1939), Lit. Bros. was charged by plaintiff with violating the Fair Trade Act by selling Ipana Toothpaste for less than 39 cents and Sal Hepatica for less than 25 cents a package. Specifically, Lit Bros. was issuing trading stamps at the rate of one stamp for every purchase of ten cents and for every ten cent increment thereof. These stamps were valued when redeemed at the rate of $1.75 ( in trade-in value for a premium) for every

990 stamps. In other words, the customer qualifies himself to receive a bonus worth $1.75 when he had paid Lit Bros. $99 for purchases. The Supreme Court determined that this was a discount of 1.76 percent off the 25 cent purchase price of Sal Hepatica and the 39 cent purchase of a tube of Ipana Toothpaste.

In affirming the judgment of the court below which had dismissed plaintiff's bill in equity, the Supreme Court of Pennsylvania applied this maxim stating at 6 A. 2d 848:

"As BROOM says in his 'Legal Maxims': 'Courts of justice generally do not take trifling and immaterial matters into account.' In 'The Reward,' 2 Dods. Adm. R. 269, 270, SIR W. SCOTT observed that 'the court is not bound to a strictness at once harsh and pedantic in the application of statutes. The law permits the qualification implied in the ancient maxim, de minimis non curat lex. Where there are irregularities of very slight consequence, it does not intend that the infliction of penalties should be inflexibly severe. If the deviation were a mere trifle, which, if continued in practice, would weigh little or nothing on the public interest, it might properly be overlooked."

In the "Notice of intention to foreclose and accelerate loan balance" which is in question here, paragraph 2 lists total unpaid late charges as $21.07 and the total amount due including monthly payments "7/1/80 thru 10/1/80 at $144.27 - $577.08" and the aforesaid late charges to be $598.15. Accordingly, the $21.07 is 3.5 percent of the total amount listed on the late charges as due. In the opinion of the court, the failure to state precisely how this sum was arrived at is under the circumstances de minimis and particularly so if the

amount of the late charges listed in the complaint ($39.82) is deducted from the amount of the judgment as entered.

Proceedings to open and/or strike default judgments are essentially equitable in nature and ruled by equitable principles: 20 Pa. Law Encyclopedia 224 (§101 Judgment).

Accordingly, defendants' petition to strike off the judgment is denied but the judgment amount is modified from $13,684.39 to $13,664.57.

## II. DEFENDANTS' ALLEGATION THAT THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION.

Defendants contention in paragraph 13 of the petition that the complaint fails to state a cause of action is without merit for reasons previously discussed.

## III. PETITION TO OPEN

In the petition to open judgment, defendant, James R. Woody, Jr. claims that he was not residing at 2832 N. Boudinot Street when the sheriff made service of the complaint.

An examination of the sheriff's return shows that service was made on February 4, 1981, at 4:15 pm by Deputy Sheriff Eugene Vardaro by handing a true and attested copy of the complaint to "an adult person named Debra."

The sheriff's return is a form which has six boxes which can be checked off to further describe the individual to whom the complaint was handed. The following boxes were checked off on the return:

"(2) an adult member of the family of said defendant, with whom said defendant resides, who

stated that his/her relationship to said defendant is that of (not filled in):

(3) an adult person in charge of defendant's residence; the said adult person having refused, upon request, to give his/her name and relationship to said defendant;"

Defendant, James R. Woody, Jr., states in paragraphs 30 and 31 of the petition:

"30. In fact, there is no member of Defendants' family named Debra and, to the best of Mr. Woody's knowledge, no one named Debra occupied or was in charge of his residence on February 4, 1981. In any event, no one gave Defendant a copy of the Complaint.

31. Mr. Woody first learned on this action when he moved back into his residence on February 21, 1981 and discovered three (3) copies of the Complaint in his mail slot."

Turning to paragraph 26 of the petition to open it states:

"26. Mr. Woody contacted the servicing agent and offered to cure the delinquency by paying $1,000.00 (approximately two-thirds of the arrearage) immediately and the remainder within a reasonable time."

In its answer to paragraph 26, plaintiff states:

"26. Admitted that Mr. Woody contacted servicing agent. Denied to the remainder of the averment. On February 6, 1981 Mr. Woody contacted servicing agent, was told that the amount necessary to cure the delinquency was $1,612.78 and he promised to bring in that amount by the following week, which amount was never tendered."

This court finds it to be a peculiar circumstance

that defendants in paragraph 26 would fail to state the date when Mr. Woody claims to have contacted the servicing agent. Furthermore, Rule 209 of the Pennsylvania Rules of Civil Procedure states:

"If, after the filing and service of the answer, the moving party does not within fifteen days:

(a) Proceed by rule or by agreement of counsel to take depositions on disputed issues of fact; or

(b) Order the cause for argument on petition and answer (in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule); the respondent may take a rule as of course on the moving party to show cause why he should not proceed as above. If after hearing the rule shall be made absolute by the court, and the petitioner shall not proceed, as above provided, within fifteen days thereafter, the respondent may order the cause for argument on petition and answer, in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule.

Adopted September 8, 1938, effective March 20, 1939; amended and effective April 18, 1975."

Accordingly, plaintiff's response to paragraph 26 being properly pleaded must be deemed admitted for purposes of this petition. Thus the pertinent part of the response thereby admitted is:

"26. . . . On February 6, 1981, Mr. Woody contacted servicing agent, was told that the amount necessary to cure the delinquency was $1,612.78 and he promised to bring in that amount by the following week, which amount was never tendered."

Similarly, plaintiff's denial of paragraphs 24 and

25 of the petition to the effect that after default defendants never did send any money to the servicing agent (defendants claiming in paragraphs 24 and 25 that they did) is deemed admitted.

Moreover, defendants' petition is indeed contradictory and incomplete in details.

In paragraph 31 defendant, James R. Woody, Jr., contends that he did not move back to "his residence" until February 21, 1981, when he discovered three copies of the complaint while in the preceding paragraph he claims that the subject property was "his residence" on the date of service. Furthermore, defendant alleges in paragraph 23 that he first became aware of the mortgage default in January, 1981, yet he fails to disclose how he acquired this information.

Based on the facts set forth and admitted in the petition and answer for purposes of this proceeding (under Pa.R.C.P. 209), it would appear that the proper service was made by the sheriff by handing a copy of the complaint to an adult woman at 2832 N. Boudinot Street on February 4, 1981, and that two days later defendant, James R. Woody, Jr., contacted the servicing agent.

Accordingly, this court is of the opinion that based on a careful scrutiny of the petition and answer and the facts deemed admitted therein pursuant to Pa.R.C.P. 209, the facts are not sufficient nor precise enough to set forth a legitimate explanation for the default and this court therefore declines to exercise its judicial discretion for the purposes of opening the judgment. See St. Joe Paper Company v. Marc Box Co., Inc., 260 Pa. Super. 515, 394 A. 2d 1045 (1978).

## ORDER

And now, January 14, 1982, defendants' petition

to strike off the judgment and/or open the judgment is hereby denied, and said petition is dismissed.

The amount of the judgment is hereby changed from $13,684.39 to $13,644.57.