J-A34044-14

2016 PA Super 7

CITIMORTGAGE, INC.

                Appellee

             v.

EDWARD F. BARBEZAT

                Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 536 MDA 2014

Appeal from the Order entered February 25, 2014
In the Court of Common Pleas of Berks County
Civil Division at No: 12-211627

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STABILE, JJ.

CONCURRING AND DISSENTING OPINION BY STABILE, J.:**FILED JANUARY 07, 2016**

      I join fully in the Majority's Opinion to the extent it addresses and disposes of Appellant's first issue.  The Majority correctly concludes that Appellee had standing to initiate the underlying foreclosure action.  I, however, must part paths with the Majority with respect to its disposition of Appellant's second issue.  For the reasons set forth below, I respectfully disagree with the Majority's conclusion that the Act 6 Notice here was proper.

      In considering Appellant's second issue, I conclude that the trial court erred in determining that the Notice *sub judice* under Act 6 was proper.  As the Majority aptly noted, in 1974, the Pennsylvania Legislature enacted Act No. 6, 41 P.S. § 101 *et seq.*, commonly referred to as "Act 6."  ***Bankers Trust Co. v. Foust***, 621 A.2d 1054, 1056 (Pa. Super. 1993), ***appeal***

*denied*, 631 A.2d 1007 (Pa. 1993). "Act 6 is essentially a comprehensive interest and usury law with numerous functions." *Id.* (citation omitted). The Act's provision regulating notice of foreclosure for owners of relatively modest homes was intended to afford homeowners who are in dire economic straits a measure of protection from overly zealous residential mortgage lenders. *Id.*

Section 403 of Act 6 sets forth the pre-foreclosure notice requirements imposed upon residential mortgage lenders for certain residential mortgages. Section 403 provides in part:

> (a) *Before any residential mortgage lender may accelerate* the maturity *of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover* under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, *such person shall give the residential mortgage debtor notice* of such intention at least thirty days in advance as provided in this section.
>
> (b) Notice of intention to take action as specified in subsection (a) of this section shall be in writing, sent to the residential mortgage debtor by registered or certified mail at his last known address and, if different, at the residence which is the subject of the residential mortgage.
>
> (c) The written notice *shall clearly and conspicuously* state:
>
>> (1) The particular obligation or real estate security interest;
>>
>> (2) The nature of the default claimed;
>>
>> (3) The right of the debtor to cure the default as provided in section 404 of this act and *exactly what performance* including what sum of money, if any, *must be tendered to cure the default*;
>>
>> (4) The time within which the debtor must cure the default;
>>
>> (5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

> (6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

41 P.S. § 403(a)-(c) (emphasis added). Act 6 further defines a "residential mortgage lender" as "any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt. The term shall also include the holder at any time of a residential mortgage obligation." 41 P.S. § 101.

When interpreting a statute, this Court is guided by the Statutory Construction Act (Act) of 1972, 1 Pa.C.S.A. §§ 1501-1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." **Walker v. Eleby**, 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." **In re S.T.S., Jr.**, 76 A.3d 24, 30 (Pa. Super. 2013) (citing to Section 1921(b) of the Act, 1 Pa.C.S.A. § 1921(b)). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa.C.S.A. § 1921(c). Indeed, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S.A. § 1922(2). Thus, no provision of a statute shall be "reduced to mere surplusage." **Walker**, 842 A.2d at 400. Finally, it is presumed "[t]hat

the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1).

Based on my review of Section 403 of Act 6, I must conclude that the Notice sent to Appellant did not comply with Act 6, because Appellee was not the mortgage lender to Appellant at the time Appellee sent the Act 6 Notice to the Appellant. As acknowledged by the Majority, the record here demonstrates that the Notice was sent by Appellee to Appellant on June 21, 2012, almost two months prior to when it actually received the mortgage by way of an assignment on August 2, 2012. Section 403(a), as emphasized above, plainly identifies that it is the residential mortgage lender who is required to provide a residential mortgage debtor notice of its intention to foreclose a residential mortgage before it may accelerate or commence suit on the obligation. 41 P.S. § 403(a).

The plain letter and spirit of this language require that the lender who holds the mortgage is the one legally able to provide the Act 6 notice to the residential mortgage debtor. To permit someone other than the holder of the mortgage to send notice would essentially require us to rewrite Section 403(a) of Act 6 to allow **any** person, regardless of whether the person possesses any interest in the debt obligation, to send the Act 6 notice. This cannot be sanctioned by this Court, as it is obligated to give full effect to the clear and unambiguous language employed by the legislature and not to render any language superfluous. Construing Section 403(a) to permit any person to send the Act 6 notice would violate the clear language of this

statute, and reduce the express reference to a "residential mortgage lender" to mere surplusage. To construe Section 403 to permit persons without an interest in a mortgage obligation to send an Act 6 notice might also invite chaos and uncertainty into this process. Section 403(c) lends support to this construction because Section 403(c) requires that the content of the Act 6 notice include "exactly what performance . . . must be tendered to cure the default." 41 P.S. § 403(c)(3). Clearly, it is the mortgage lender (or its authorized agent) who possesses binding authority to make demand on the obligation and upon whom a debtor may justifiably rely to provide the required information to cure a default. Moreover, the act of sending the Notice prior to Appellee's actual ownership of the mortgage suggests the type of precipitous action by an overzealous lender that the legislature sought to avoid by enacting Act 6.

I also reject the trial court's reasoning that the Notice was not defective because Section 403(c) does not require the name of the mortgagee in the notice of intention to foreclose. It is true Section 403(c) does not require that the name of the mortgagee or the chain of possession of the note and the mortgage be identified in the notice.[1] However, Section

---

[1] The Majority observes that the protections provided to the debtor under Section 403 do not require the disclosure of how the holder gained possession of the note and mortgage and asserts that its interpretation of Section 403 "is consistent with the real world buying and selling of mortgage instruments." Maj. Op. at 13, n.2. I, however, disagree. The requirements for an Act 6 notice should not be analogized to the buying and selling of

*(Footnote Continued Next Page)*

403(a) does make it explicitly clear that it is the residential mortgage lender who is to provide this notice. The flaw in the trial court's reasoning is that it failed to give full effect to all the provisions of Section 403. Section 403(a) identifies the procedural prerequisite that must be satisfied before a residential mortgage lender may file a foreclosure action, *i.e.*, the residential mortgage lender is to send notice before exercising any remedy or commencing any action on the residential mortgage obligation. Section 403(b) addresses the manner in which the notice must be prepared and sent to the residential mortgage debtor. Section 403(c) details what information the notice must conspicuously state to the debtor. These three provisions operate in tandem with respect to the notice to be given to the residential mortgage debtor. To reiterate, this Court is obligated to give full effect to each provision and not render any parts surplusage.

I, likewise, disagree with the Majority's conclusion that anyone can send an Act 6 notice so long as they were a mortgagee "at any time." Maj. Op. at 14. If this Court were to adopt the Majority's construction of Section 403, then we certainly would be inviting chaos. Again, to construe Section

_(Footnote Continued)_  ───────────────

mortgage instruments. Mortgagors experience minimal disruptions or consequences when mortgage instruments are bought and sold. Here, as explained above, when an Act 6 notice is issued, the effect and consequence on borrowers is often severe, with the possibility of foreclosure looming. Thus, it is imperative that borrowers receive an Act 6 notice from the proper mortgage lender, detailing what performance is required to stave off foreclosure.

403 to permit persons without an interest in a mortgage obligation to send an Act 6 notice would invite uncertainty into this process. The Majority also claims that an Act 6 notice "is not a foreclosure action." *Id.* Although true, I emphasize that the issuance of an Act 6 notice is an important prerequisite to filing an action in foreclosure. Therefore, the importance of such notice cannot be minimized.

To the extent the Majority approves the trial court's and Appellee's reliance on the non-binding decision in *Federal National Mortgage Association. v. Woody*, 25 Pa. D. & C. 3d 604, 1982 WL 531 (Phila. Com. Pl. 1982) in support of the proposition that a mortgage lender's name need not appear on a notice of intention to foreclose, I must disagree. Unlike this case, the entity that issued the notice of intention to foreclose in *Federal National* was either the residential mortgage lender or its agent. *Id.* at 606 ("Since this notice makes it clear that Lomas & Nettleton Company is either the mortgagee or the service agent for it and that the payments referred to therein if made to that company would cure the default, it is the opinion of the court that this is sufficient."). Instantly, the facts of record indicate Appellee here was neither the mortgagee nor its servicing agent when Appellee issued the Notice.

Viewing the record in the light most favorable to the non-moving party and resolving all doubts as to the existence of a genuine issue of material fact against the moving party, I conclude that the trial court erred in

granting Appellee's motion for summary judgment as a matter of law on its foreclosure complaint. Accordingly, I would reverse the trial court's order.