842 A.2d 389

**Ruth J. WALKER and Charles Walker, h/w, Appellants**

v.

**Pauline ELEBY, Zakiya Eleby, Madalyn Janeen Eleby, Clarence James Eleby and the City of Philadelphia, Appellees.**

**Appeal of Ruth J. Walker.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 2002.

Decided Feb. 18, 2004.

Francis X. Dochney, Philadelphia, for Ruth J. Walker, appellant.

Alan C. Ostow, Philadelphia, for City of Philadelphia, appellee.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### OPINION OF THE COURT

JUSTICE CASTILLE.

The issue on appeal is whether, under Section 8542(b)(7) of the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 et

seq. ("Tort Claims Act" or "Act"), a municipality is responsible for the maintenance of public sidewalks abutting state highways located within that municipality and, therefore, may be liable for injuries occurring on those sidewalks. The Commonwealth Court held that where, as here, the Commonwealth's Department of Transportation ("Department" or "Penn DOT") is responsible for maintaining a state highway located within a municipality, the municipality is relieved of any responsibility to maintain the sidewalks abutting that state highway. Because we find that the municipality is responsible for sidewalks within the municipality, irrespective of state ownership of the roadway, we reverse.

The facts underlying this appeal are simple and undisputed. On January 10, 1998, appellant, Ruth Walker, fell on a cracked sidewalk adjacent to 5119 Chestnut Street in Philadelphia, injuring her wrist and shoulder and losing four teeth. Appellant and her husband, Charles Walker, filed suit against the owners of the premises at 5119 Chestnut Street, Pauline Eleby, Zakiya Eleby, Madalyn Janeen Eleby and Clarence Eleby (the "Elebys") as well as the City of Philadelphia, seeking damages for personal injuries caused by the fall. Appellant alleged that the Elebys were primarily liable as the adjacent property owners for the condition of the sidewalk and that the City was liable because it is responsible for the condition of all public sidewalks located within the City. Neither party disputes that Chestnut Street, including the block in which appellant fell, is designated as a state highway.[1]

The City filed preliminary objections and three separate motions for summary judgment, claiming that, because the Commonwealth owns Chestnut Street, the City is immune from liability under Section 8542(b) of the Tort Claims Act. The trial court overruled the preliminary objections and de-

---

1. Pursuant to the State Highway Act of 1963, Act of August 27, 1963, No. 530, the roadway located in Philadelphia "[b]eginning at the intersection of Cobbs Creek Parkway and Chestnut Street, thence eastwardly on Chestnut Street to the intersection of Chestnut Street and Schuylkill Expressway" was adopted as a state highway and designated Legislative Route 67351. This stretch of Chestnut Street encompasses the 5100 block where appellant fell.

nied the motions for summary judgment. The matter then proceeded to arbitration where the arbitration panel found in favor of appellant and against the Elebys and the City.[2] The City appealed to the Court of Common Pleas of Philadelphia County.

Following a bench trial, the trial court found in favor of appellant against the Elebys, but in favor of the City on the claims against it.[3] Appellant filed a motion for post-trial relief, requesting that the trial court vacate the verdict and grant a new trial or enter judgment notwithstanding the verdict on her claims against the City. Appellant argued that the trial court had erred in concluding that the City was not secondarily liable for an injury occurring on the sidewalk because Chestnut Street is a state highway. Citing the Commonwealth Court's recent decision in *Sherman v. City of Philadelphia*, 745 A.2d 95 (Pa.Cmwlth.2000) (en banc) (plurality), the trial court denied the motion.

In *Sherman*, the Commonwealth Court plurality explained the distinction between primary and secondary liability as follows:

At common law there were two types of liability which could be imposed. The first, primary liability, is imposed on a party who is directly negligent. *See Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 465 A.2d 1231 (1983). Primary liability flows from the duty imposed on an individual or entity who owns or controls property. An example is the duty imposed upon a property owner to keep the sidewalks in front of his property in good repair.

Conversely, secondary liability "rests upon a fault that is imputed or constructive only, being based on some legal relation[ship] between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily respon-

2. The Elebys never formally appeared in this action, although Pauline Eleby did attend the arbitration.

3. Charles Walker had asserted a loss of consortium claim, but it was withdrawn prior to trial.

sible." *Builders Supply v. McCabe,* 366 Pa. 322, 328, 77 A.2d 368, 371 (1951). Our Supreme Court in *Builders Supply* further distinguished between primary and secondary liability as follows:

> The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence.... It depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. Secondary liability exists, for example, ... when a pedestrian is injured by falling in a hole in the pavement of a street; in such a case the abutting property owner is primarily liable because of his failure to maintain the pavement in proper condition, but the municipality is secondarily liable because of its having neglected to perform its duty of policing the streets and seeing to it that the property owners keep them in repair; if therefore the injured person chooses to bring suit against the municipality the latter can recover indemnity from the property owner for the damages which it has been called upon to pay.

> *Id.* at 328, 77 A.2d at 370.

*Sherman,* 745 A.2d at 99 (emphases deleted).[4] The *Sherman* plurality held that a municipality bore no secondary liability for an injury where the Commonwealth, rather than the municipality, owned the street abutting the sidewalk on which the injury occurred.[5] In this case, since the City did not own the premises at 5119 Chestnut Street, it could only be second-

---

**4.** We note that the language employed in *Builders Supply* is somewhat imprecise: *i.e.,* obviously, adjoining property owners are under no obligation to keep public **streets** in repair. We understand the example posed in *Builders Supply* as intending to refer to the duty of a landowner respecting the condition of the sidewalk or pavement.

**5.** *Sherman* is distinguishable from the case *sub judice* in that the City of Philadelphia owned the abutting property in *Sherman,* although not the street. Thus, the Commonwealth Court in *Sherman* found that the City was primarily liable as the owner of the property adjacent to the sidewalk but not secondarily liable because the Commonwealth owned the street.

arily liable. The trial court found that the City enjoyed complete immunity because Chestnut Street is a Commonwealth highway and thus the City had no duty to police the condition of the abutting sidewalk. The trial court expressed concern that this construct could lead to "inequitable results" because, in the court's view, the City's exposure to liability for injuries suffered on sidewalks in the City should not depend upon ownership of the roadways, but it deemed itself bound by the *Sherman* plurality and related cases.

On appeal, the Commonwealth Court affirmed, holding that the plain language of the Tort Claims Act confers immunity on the City in this instance. The Court noted that local agencies in Pennsylvania generally are immune from suit for damages caused by an act of the local agency or the negligence of the agency's employees. *Id.* § 8541. Section 8542 lists eight exceptions to governmental immunity, however, the seventh of which applies to sidewalks. That exception to immunity only applies to dangerous conditions of sidewalks "within the rights-of-way of streets owned by the local agency." 42 Pa.C.S. § 8542(b)(7). The Commonwealth Court found that, because Chestnut Street has been designated as a state highway, the sidewalk where appellant fell is not within the right of way of a street owned by the City. Therefore, the Commonwealth Court held, the City remains immune from tort liability in this instance. In support of its holding, the Commonwealth Court cited both to the *Sherman* plurality decision and to the panel decision in *Bruce v. Gadson,* 127 Pa.Cmwlth. 159, 561 A.2d 74 (1989).

We granted allowance of appeal to consider the important issue of whether, for purposes of the sidewalk exception to tort claim immunity, a local agency (here, the City) is liable for the maintenance of sidewalks within the City but which abut roads designated as state highways, an issue with which the Commonwealth Court has struggled in the recent past. The issue involves the proper interpretation of a statute, which is a question of law as to which our review is plenary.

*See Commonwealth v. Gilmour Manufacturing Co.,* 573 Pa. 143, 822 A.2d 676, 679 (2003) (citation omitted).

The Tort Claims Act exception at issue reads as follows:

(b) **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

\* \* \*

(7) Sidewalks.—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

*Id.* § 8542(b)(7). This Court has noted that, "[b]ecause of the clear intent [of the Act] to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." *Lockwood v. City of Pittsburgh,* 561 Pa. 515, 751 A.2d 1136 (2000) (citation omitted).

Appellant argues that the City should be deemed secondarily liable for maintaining public sidewalks within the City environs, irrespective of whether the roadways abutting those sidewalks technically have been designated as state highways. Appellant maintains that municipalities traditionally are responsible for ensuring that their sidewalks are maintained in a safe condition. Appellant argues that the legislation vesting responsibility in the Commonwealth for maintaining highways designated as state highways—legislation which did not vest concomitant responsibility in the Commonwealth to maintain the adjoining sidewalks—should not be construed as *sub silen-*

*tio* intending to do away with that "historic responsibility" of local government.

The City responds that, under the plain language of the Tort Claims Act, a street must be "owned" by the local agency to fit within the sidewalk exception to tort immunity. The City argues that it does not own this particular street, the Commonwealth does. The City argues that, although state highway takeover statutes do not explicitly say that the Commonwealth thereby "owns" the roads taken over, all relevant indicia of ownership and control ("exclusive authority and jurisdiction, maintenance, repair, rebuilding, reconstruction") rest with the Commonwealth, while none of those traditional indicia remain with the City. The City further contends that the sidewalk exception does not state that immunity is waived for sidewalks in possession of, or under the care, custody or control of, or under the jurisdiction of, the local agency; nor does it state that immunity is waived merely because the Commonwealth-owned street happens to be located within the boundaries of the local agency. Finally, the City notes that the courts below acted consistently with a line of Commonwealth Court authority holding that a local agency is not liable for a dangerous condition of a sidewalk abutting private property and along a state highway.

The Commonwealth Court has issued a number of decisions in the last two decades relating to the liability of a municipality for injuries occurring on sidewalks abutting roadways designated as state highways. In *Kozura v. A & J Quality Shoppe, Inc.,* 117 Pa.Cmwlth. 9, 542 A.2d 637 (1988), a pedestrian was injured in a fall on a sidewalk in front of a restaurant on Sunbury Street in the Borough of Minersville. The plaintiff sued the restaurant owner and the Borough, alleging that the defective condition of the sidewalk caused her injury. Sunbury Street is designated as a state highway. The Borough moved for summary judgment, which the trial court granted, finding that no liability could be imposed against the Borough pursuant to Section 8542 because the Borough did not own the right-of way because Sunbury Street is a state highway. On appeal to the Commonwealth Court,

the plaintiff argued that summary judgment was inappropriate because there were genuine issues of material fact: *i.e.,* the Commonwealth had asserted no control over the sidewalks adjacent to Sunbury Street, and the fact that Sunbury Street is a state highway does not establish that the Commonwealth owns and controls the entire right-of-way including the sidewalks. The Commonwealth Court agreed and remanded to the trial court for a determination regarding ownership of the right-of-way of the state highway.

One year later, the Commonwealth Court decided *Bruce v. Gadson,* 127 Pa.Cmwlth. 159, 561 A.2d 74 (1989), a case where the plaintiff fell while walking on Lancaster Avenue, a state highway, in front of a real estate agency and filed suit against the agency and the City of Philadelphia. The *Bruce* court opined that the decision in *Kozura* involved consideration of both ownership and control of the right-of-way by a local agency, resulting in the reversal of the trial court's grant of summary judgment. By contrast, this second Commonwealth Court panel concluded, without explanation, that the sidewalk on which the plaintiff fell was not within the City's right-of-way because the General Assembly had designated Lancaster Avenue a state highway. Therefore, according to the *Bruce* panel, the City did not own the right-of-way and was immune from liability.

The Commonwealth Court next visited the issue in *Lyons v. City of Philadelphia,* 159 Pa.Cmwlth. 107, 632 A.2d 1006 (1993). There, the plaintiff fell while alighting from a bus onto a sidewalk on Bustleton Avenue, a state highway located in Philadelphia. She sued the City of Philadelphia, alleging that Bustleton Avenue was a City street and, therefore, the City was responsible for maintaining the sidewalk adjacent to the street. The City answered the complaint by denying that it owned or controlled Bustleton Avenue. Subsequently, the City filed a motion for summary judgment, for the first time identifying Bustleton Avenue as a state highway. The City claimed that because Bustleton Avenue is a state highway, the fall did not occur on a sidewalk within the City's right-of-way but rather on property owned by the Commonwealth, and

therefore, the City could not be liable under Section 8542. The trial court denied the City's motion for summary judgment without opinion. The City later filed a second motion asserting the same issues. This time, a different trial judge granted the motion and dismissed the plaintiff's complaint with prejudice. The order granting summary judgment was accompanied by a handwritten note stating that because the City was only secondarily liable and the plaintiff had not joined the abutting property owners in the suit, summary judgment was proper.

On appeal to the Commonwealth Court, the plaintiff argued that she was not required to join the abutting property owners in order to maintain a negligence action against the City. The Commonwealth Court agreed that plaintiff was not required to join the abutting owners in order for the City to be secondarily liable. However, the Commonwealth Court found, again without discussion, that the City was not secondarily liable in any case because the City did not own Bustleton Avenue as a result of the legislative designation of Bustleton Avenue as a state highway.

Two years later, a sharply divided en banc panel of the Commonwealth Court rendered its decision in *Gray v. Logue*, 654 A.2d 109 (Pa.Cmwlth.1995) (en banc). There, a plaintiff who tripped on a protruding piece of pipe in front of a hardware store on a sidewalk adjacent to East Pitt Street in Bedford Borough sued the owners of the hardware store and the Borough. The Borough answered the complaint, asserting in new matter that it was immune from suit under Section 8542, and joined Penn DOT as an additional defendant. Then, the Borough moved for summary judgment on immunity grounds. The trial court granted the motion, finding that East Pitt Street and the adjacent sidewalk were owned by Penn DOT because the street had been designated as a state highway. Because the Borough did not own the street, the court held that Section 8542 did not apply and the Borough was not liable.

The plaintiff argued on appeal that, even though the Borough did not own the street,[6] the Borough had a right-of-way over the sidewalk where the injury occurred. According to the plaintiff, the Borough essentially enjoyed an easement on the sidewalk giving the Borough the authority to repair and maintain the sidewalk. The Commonwealth Court disagreed. First, the court determined that, because it was undisputed that Penn DOT owned the street, the Borough could not be held liable under Section 8542. Then, the court addressed the plaintiff's "easement" claim, finding it without merit:

Gray incorrectly argues that the Borough can be held liable under the sidewalk exception because it has the right under certain statutes and ordinances to enter upon the sidewalk and make repairs. Section 8542(b)(7) of the Code, however, expressly requires that the local agency own the sidewalk before liability may attach. We specifically concluded in *Bruce* that, where a local agency has only a possessory interest in a sidewalk or has control over the maintenance of a sidewalk, an action cannot be maintained against the local agency, because the sidewalk exception requires that the local agency own the right-of-way. *Pritchard* [*v. City of Pottsville*, 113 Pa.Cmwlth. 38, 536 A.2d 844 (1988)]; *see also Phillips v. City of Philadelphia*, 148 Pa.Commonwealth Ct. 175, 610 A.2d 509 (1992) (a statutory duty of local agency to maintain a state-owned street, by itself, was insufficient to satisfy the streets exception to governmental immunity). Moreover, even assuming that the statutes and ordinances cited by Gray constitute an easement granting the Borough a right-of-way over the sidewalk, an easement is not the equivalent of owning the land. An easement is merely "a liberty, privilege, or advantage which one may have in the lands of another ... [which] cannot be an estate or interest in the land itself, or a right to any part of it." *Coffin v. Old Orchard Development Corp.*, 408 Pa. 487, 494, 186 A.2d 906, 910 (1962) (emphasis in the original), quoting *Clements v. Sannuti*, 356 Pa. 63, 65,

6. Penn DOT admitted in the trial court that it owned East Pitt Street at the site of the plaintiff's fall.

51 A.2d 697, 698 (1947). Hence, a local agency's easement over a sidewalk is insufficient to satisfy the ownership requirement of Section 8542(b)(7).

*Id.* at 112 (footnote omitted). Based upon these conclusions, the *Gray* Court affirmed the trial court's finding that the Borough was immune from liability.

Judge Pellegrini filed a dissenting opinion, which was joined by Judges McGinley and Friedman. The dissent opined that "the majority misperceives the nature of the obligation placed on a municipality to insure the safety of pedestrians on sidewalks by insuring that they are safe for pedestrian traffic." *Id.* at 113 (Pellegrini, J., dissenting). The dissent noted that the majority had ignored that "[i]t is the traditional duty of a municipality to see that sidewalks are safe." *Id.* at 114. In support of this proposition, the dissent quoted the following passage from this Court's decision in *Koerth v. Borough of Turtle Creek*, 355 Pa. 121, 49 A.2d 398 (1946):

> It is, of course, the duty of a municipality to maintain its sidewalks in a reasonably safe condition, or, rather, when it has reasonable notice express or implied of a defective condition, to see that the property owner performs his duty to make the necessary repairs, the duty of the latter being primary and absolute, that of the municipality secondary and supplemental.

49 A.2d at 399–400.

The dissent further noted that the continuing nature of this traditional duty is reflected in both state and local legislation:

> Enabling municipalities to carry out this duty, the General Municipal Law gives all municipalities in the Commonwealth the power to require property owners to construct and maintain sidewalks. *See also* 53 P.S. §§ 46801–46806 (specifically, authorizing boroughs to require property owners to construct and maintain sidewalks). The Borough, in turn, has passed an ordinance at Chapter XXI requiring all property owners within the Borough to repair their sidewalks.... Consistent with this view, in *Pritchard v. City of Pottsville*, 113 Pa.Commonwealth Ct. 38, 536 A.2d 844

(1988), we held that the exception applies to sidewalks in which the municipality has a right-of-way regardless of who owns the cartway. Unlike municipalities, the Commonwealth has no interest in the safety of sidewalks because its governmental obligation is to see that people are able to travel from town to town and city to city within the Commonwealth rather than the safety of pedestrian traffic within the confines of particular municipalities.

654 A.2d at 114 (Pellegrini, J., dissenting). Finally, the dissent noted that the majority's "plain meaning" approach to Section 8542(b)(7) was flawed because it did not consider the following historical and legislative complexities:

Ignoring that it is the traditional obligation of municipalities and not the Commonwealth to see that sidewalks are made safe for pedestrian traffic, the majority adopts a textualist approach holding that because the sidewalk exception requires that the "sidewalks be within the right-of-way of streets owned by the local agency," the "plain meaning" of these words is that if the street is owned by another governmental entity, then the sidewalk exception does not apply. While that approach is certainly appropriate, the correctness of the majority holding is dependent on what it finds to be the "plain meaning" to be also the "real" meaning of the word.

At the core of the majority's opinion, "plain meaning" is what it considers the "street." It mistakenly assumes that the term "street" as used in 42 Pa.C.S. § 8542(b)(7) only means that portion of the right-of-way over which vehicles travel. However, the term "street" encompasses two distinct portions; the cartway for vehicles and the sidewalk for pedestrians. *Mercantile Library Co. v. Fidelity Trust Co.,* 235 Pa. 5, 83 A. 592 (1912). When the Commonwealth takes ownership of a "street," it takes ownership of the cartway as a matter of law. *See, e.g.,* 36 P.S. § 1758–103 (limiting liability of Commonwealth to maintain certain designated state highways only to that portion available to vehicular traffic). However, the same is not true for sidewalks. Even when the Commonwealth takes over the cartway of a

street and designates it a state highway, a municipality normally retains control of a portion of the "street" right-of-way known as the sidewalk. *Kozura v. A & J Quality Shoppe,* 117 Pa.Commonwealth Ct. 9, 542 A.2d 637 (1988). *Id.* at 114–15.

In *White v. City of Philadelphia,* 712 A.2d 345 (Pa.Cmwlth. 1998), the Commonwealth Court was confronted with the question of whether the City of Philadelphia was responsible for the negligent care and maintenance of a sidewalk adjacent to a state highway. This time, however, the City was the abutting property owner, as the plaintiff had fallen on the sidewalk outside the City's Visitors Center located at the intersection of 16th Street and John F. Kennedy Boulevard, both of which are designated as state highways. The City filed a motion for judgment on the pleadings, which the trial court granted, finding that the City is liable under Section 8542 only for injuries caused by dangerous conditions of sidewalks within rights-of-way owned by the local agency and that it was undisputed that the area where the plaintiff fell was situated between two state highways.

On appeal, the Commonwealth Court discussed the issue of ownership of state highways. Citing section 542 of the State Highway Law, 36 P.S. § 670–542,[7] the court concluded that: "The plain language of this Section precluded any responsibility on the part of the Commonwealth for maintenance of sidewalks abutting roads that have been designated and taken over as state highways." *White,* 712 A.2d at 348. Applying the statutory language to the facts, the Court concluded that the ownership of the sidewalk was unclear:

[I]t is clear that the City owns the Philadelphia Visitors Center and that the sidewalk where the injury allegedly occurred therefore is adjacent to a property owned by the City. Absent any other considerations, the City would be the

7. Section 542, which relates to state takeover of roadways in first and second class cities, provides, in pertinent part: "That nothing in this section shall be construed to place upon the Commonwealth any obligation to repair and maintain the curbing and footways of any such street, or to remove snow or keep streets clean ..."

primarily liable owner of the sidewalk. Section 8542(b)(7) of the Judicial Code specifies "sidewalks within the rights-of-way of streets owned by a local agency. . . ." However, as Judge Pellegrini pointed out in his forceful dissent in *Gray*, the term "street" encompasses two distinct portions—the cartway available for vehicles and the sidewalk available for pedestrians. Section 542 of the State Highway Law defines the effect of the Commonwealth's designating and taking over a street in a city of the first class as a State highway. Neither that provision nor any other that this Court has found clearly provides that such an act of designation and taking over constitutes vesting ownership of the street, including the sidewalk, with the Commonwealth.

*Id.* at 348 (footnote omitted). Concluding that the legislative scheme appeared to create "the anomalous and unjust result" that a plaintiff would not be able to assert a cause of action against either the City or the Commonwealth for an injury caused by a defect of a sidewalk located adjacent to a City-owned property that abuts a road designated as a State highway, the court interpreted the phrase "sidewalks within the rights-of-way of streets owned by the local agency" contained in Section 8542 "to include sidewalks in a city of the first class that are owned by the city and that abut a state highway." *Id.*

Two years later, the Commonwealth Court issued its divided, plurality decision in *Sherman.* The plaintiff in that case had fallen on a section of defective sidewalk in front of the City of Philadelphia's Fire Department Administration Building on Spring Garden Street. The section of Spring Garden Street abutting the sidewalk had been designated as a state highway. The plaintiff sued the City. Following discovery, the City filed a motion for summary judgment, arguing immunity, which the trial court granted. The plaintiff then appealed to the Commonwealth Court. Authoring the lead opinion, then-President Judge Doyle discussed the Commonwealth Court's prior decisions in *Bruce*; *Lyons*; *Gray* and *White* and concluded that "the *White* opinion incorrectly disregarded the phrase 'within a right of way' owned by the local agency" in

concluding that the City was not immune. 745 A.2d at 103 n. 5. The lead opinion went on to discuss the anomalous situation that arises when an injury occurs on a sidewalk located adjacent to a municipally-owned property on a street located within the municipality but designated as a state highway:

> [W]e are confronted with a disparity in the liability for injuries which occur on sidewalks adjacent to some public property, but not all public property; i.e., a disparity between Commonwealth sidewalk liability and local agency sidewalk liability, complicated by requiring a decision as to which entity, the local agency or the Commonwealth owns not only the street (cartway) but the right-of-way. This anomaly has arisen, in part, as a result of the language employed in our construction of the exceptions to governmental immunity. The question remains, then, how to reconcile this lacuna in the coverage of the exceptions. In *White*, we attempted to "fill-in" the gap by imposing secondary liability on the City because the Commonwealth, although it took over the street at issue, was responsible only for the maintenance of the roadway surface, and the City remained responsible for the upkeep of the sidewalk on which White was injured. Despite the fact that the sidewalk was not within the right-of-way of a street owned by the City, the *White* decision concluded that the City must be responsible for the sidewalk, not because the sidewalk was part of the City's realty, but because the Commonwealth did not take over all of the right-of-way encompassing the sidewalk, just the road surface. Although we agree with the ultimate outcome in *White*, reversing the grant of summary judgment, and agree with its acknowledgment that a "gap in coverage" exists in the interpretation of governmental immunity, the Court now eschews the rationale used in *White* to reach that result.

*Id.* at 104.

The lead opinion ultimately concluded that the better method for approaching a situation where the municipality owns the property abutting the sidewalk on a designated state highway is to view the municipality as bearing primary liabili-

ty for injuries occurring on the sidewalk pursuant to the real property exception to local government immunity.[8]  In order to reconcile this interpretation of the real estate exception with the statutory language which explicitly excluded sidewalks from the definition of real property, the plurality opined that the General Assembly did not intend to include sidewalks adjacent to buildings or property owned by the municipality. Thus, the *Sherman* plurality concluded that the City was primarily liable to the plaintiff under the real property exception.

In a concurring and dissenting opinion,[9] Judge Smith agreed with the plurality's result that the City was not immune, but disagreed with the lead opinion's analysis.  Pertinent to the issue before this Court today, Judge Smith disagreed with the plurality's conclusion that the designation of a street as a state highway means that the Commonwealth "owns" the street:

> The act of designation as a State highway is provided for by statutes, and it has only the legal effect expressed in the statutes. Nevertheless, beginning with *Pritchard v. City of Pottsville*, 113 Pa.Cmwlth. 38, 536 A.2d 844 (1988), this Court simply assumed, with no discussion or analysis of the relevant statutes, that when a road was designated as a State highway, a sidewalk alongside it could not fall within the meaning of "sidewalks within rights-of-way of streets

**8.**  The real property exception (42 Pa.C.S. § 8542(b)(3)), which is distinct from the sidewalk exception (*id.* § 8542(b)(7)), provides:

> 3) Real property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.  As used in this paragraph, "real property" shall not include:
>> (i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
>> (ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;
>> (iii) streets; or
>> (iv) sidewalks.

**9.**  Judges Flaherty and Leadbetter dissented in separate opinions, taking issue with the plurality's interpretation of the real property exception to include sidewalks adjacent to municipally owned property.

owned by the local agency" in Section 8542(b)(7). Cases cited by the majority routinely reaffirmed this interpretation, and in some, such as *Gray v. Logue*, 654 A.2d 109 (Pa.Cmwlth.1995), the question of whether designation as a State highway equated with "ownership" by the Commonwealth was not even contested. Various provisions of the State Highway Law ... clearly show however that the legislature never intended the act of designation as a State highway to constitute the assumption of "ownership" of the designated street to the exclusion of the ownership of the City.

*Id.* at 106 (Smith, J., concurring and dissenting).

Judge Smith went on to discuss the various sections of the State Highway Law that supported a conclusion that designation of a highway as a state highway did not suggest a transfer of "ownership:" (1) 36 P.S. § 670–102(1), which states that the term state highway does not include any street in any city, borough or incorporated town, even if taken over as a state highway; (2) 36 P.S. § 670–541, which provides that the taking over of a street in a city of the first or second class shall not be construed to place upon the state "any authority to regulate traffic, parking or the general use by the traveling public of the streets" and further states the purpose of the takeover as "maintenance or improvement;" (3) 36 P.S. § 670–542, which expressly provides that "nothing in this section shall be construed to place upon the Commonwealth any obligation to repair and maintain the curbing and footways of any such street, or to remove snow or keep streets clean;" and (4) 36 P.S. § 670–413, which outlines a mechanism for the state to acquire ownership of land. Judge Smith concluded that because there was no clear legislative indication that the state acquires ownership of a road through the state highway designation, the municipality remains the owner of such streets for purposes of Section 8542(b)(7) of the Tort Claims Act:

Thus from the time of the earliest enactment and interpretation of relevant provisions of the State Highway Law and their predecessors, the legislative intent was clear that

the act of designation and taking over of a road as a State highway imposed certain enumerated responsibilities upon the Commonwealth in regard to maintenance and improvement. Nothing in the State Highway Law indicated, however, that the act of designation constituted acquiring any form of interest in the "ownership" of the road that was designated. Section 413 affirmatively indicates to the contrary under the maxim *expressio unius est exclusio alterius*.

Both the general provisions of the State Highway Law and those specifically applicable to cities of the first class show that there never was any conflict between the State Highway Law and the grant of an exception to governmental immunity in Section 8542(b)(7) for "a dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency." A street that was owned by the City of Philadelphia continued to be owned by the City after it was designated as a State highway.

*Id.* at 108.

Despite its repeated grappling with the issue, the Commonwealth Court has come to no clear resolution of the question of the application of Section 8542(b)(7) in cases involving injuries occurring on sidewalks abutting municipal roadways which have been designated as state highways. It appears that the interplay between the State Highway Law and Section 8542 is the source of the difficulty, with the sticking point being the issue of ownership. As noted by Judge Smith in her concurrence/dissent in *Sherman*, the early cases simply assumed that the Commonwealth owned roadways which were designated as state highways, apparently because the parties failed to contest the question of Commonwealth ownership. As the above summary of Commonwealth Court precedent reveals, there are logical arguments to be made on either side of the question of ownership for purposes of Tort Claims Act immunity. This Court's task is to attempt to reconcile the statutory enactments and discern the controlling legislative intent.

■ The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, directs that the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). The clearest indication of legislative intent is generally the plain language of a statute. *See, e.g., Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted). Thus, when the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995). It is only when "the words of the statute are not explicit" on the point at issue that resort to statutory construction is appropriate. 1 Pa.C.S. § 1921(c); *see Commonwealth v. Packer,* 568 Pa. 481, 798 A.2d 192, 196 (2002) ("Only when the language of the statute is ambiguous does statutory construction become necessary."). Moreover, in construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage. . . ." *Id.* § 1903. Finally, the statute must "be construed, if possible, to give effect to all its provisions," so that no provision is reduced to mere surplusage. *Id.* § 1921(a).

■ If read separately and in isolation, the language of the State Highway Law and Section 8542(b)(7) might present no facial ambiguity. However, as the experience in the Commonwealth Court has shown, when an issue requires an analysis of the interplay between the statutes, it is unclear which governmental entity may be said to own a roadway located in a municipality that has been designated a state highway. There is no question that the portion of Chestnut Street where appellant fell was designated as part of the state highway system. *See* note 1, *supra.* But, there is force to appellant's argument that the mere fact that Chestnut Street has been designated a state highway, which vests responsibility in the Commonwealth for its maintenance and repair, *etc.,* does not mean that Chestnut Street and its accompanying sidewalks (*i.e.,* the cartway and the sidewalks) must be deemed "owned" by the Commonwealth for purposes of Tort Claims Act immunity.

The General Assembly has not explicitly stated that designation of a street in a city of the first or second class as a state highway denotes Commonwealth ownership as a general matter, much less for purposes of the Tort Claims Act. Indeed, as Judge Smith noted in her concurrence/dissent in *Sherman*, the State Highway Law suggests a contrary conclusion: that the Commonwealth assumes responsibility for maintenance and repair of the road only, while responsibility for regulation of traffic, parking and use of the streets as well as the obligation to repair and maintain curbing and footways, remove snow and keep streets clean, remains with the city in which the street is located. *See* 36 P.S. §§ 670–541, 670–542. Further, it is notable that the State Highway Law provides a procedure whereby the Commonwealth may acquire an interest in land either through purchase or the right of eminent domain, *see* 36 P.S. 670–413, but such procedure is not implicated by the mere designation of a city road as a state highway. The designation of a state highway requires only a legislative act so designating the road, not the acquisition of any interest in the real property that is the subject road.

Since the General Assembly did not specifically undertake to define the term ownership in the Tort Claims Act, it is also appropriate to consider, as Judge Pellegrini did in his dissenting opinion in *Gray*, that municipalities had a traditional duty to maintain sidewalks in a safe condition by, inter alia, seeing to it that property owners perform necessary repairs. *See, e.g., Koerth, supra; Mercantile Library, supra.* Presumably, the General Assembly was aware of this traditional approach when it legislated in this area. It is also significant that this traditional recognition of the role played by municipalities is corroborated by contemporary regulation. For example, it is undisputed that the City of Philadelphia regulates parking and the flow of traffic on Chestnut Street by installing and maintaining traffic control devices, and Philadelphia Police Officers cite drivers for traffic infractions along Chestnut Street notwithstanding its designation as a state highway. As for the sidewalks, the City regulates street vendors and outdoor café seating on Chestnut Street's sidewalks, places and maintains

trash receptacles on the sidewalks, and Philadelphia Police patrol the sidewalks and enforce the law. If the Commonwealth actually "owned" Chestnut Street, one would expect that the authority to regulate conduct on the street and sidewalks would reside with the Commonwealth, not the City. The authority remaining with the City is an indicia of continuing ownership; while the Commonwealth's limited responsibility to maintain the cartway does not ineluctably suggest a sub silentio designation of responsibility for the abutting sidewalks.

Because the General Assembly has not expressly provided that the Commonwealth acquires an ownership interest in a city roadway designated as a state highway nor has it indicated any legislative intent to create such an ownership interest, we find that the Commonwealth does not "own" the roadways so designated for purposes of Section 8542(b)(7). The Commonwealth Court's initial decisions which assumed Commonwealth ownership were based largely upon concessions or stipulations by the parties; but, mere agreement of the parties cannot establish a legally binding ownership interest in the Commonwealth, nor can it strip a municipality of its ownership interest, where the legislation itself does not do so. The General Assembly has established that city roads are designated as state highways "for maintenance and improvement," see 36 P.S. 670–541, and has specifically exempted the Commonwealth from "any obligation to maintain the curbing or footways of any such street, or to remove snow or keep streets clean." See 36 P.S. § 670–542. Given the limited scope of the Commonwealth's "takeover" of a city road designated as a state highway, we hold that the Commonwealth does not "own" such a road for purposes of determining Tort Claims Act immunity.[10]

Having found that our General Assembly has not conferred ownership upon the Commonwealth, it follows necessar-

10. Our decision today is limited to sidewalks abutting designated state highways located in cities of the first or second class, where the street and sidewalk were already in existence at the time of the designation as a state highway and were not built or required to be built by the Commonwealth. We are aware that not all sidewalks abutting state

ily that ownership remains with the municipality in which the designated roadway is located. This ownership by the municipality brings sidewalks along state highways located within municipalities within the sidewalk exception because the sidewalks are located within a right-of-way owned by the local agency. Therefore, the City of Philadelphia must be deemed to own Chestnut Street where appellant's injury occurred. Because the City owns Chestnut Street, the sidewalk where appellant fell is within the right of way of a street owned by the City, and § 8542(b)(7) applies. Therefore, the City can be held secondarily liable to appellant for her injuries.

Accordingly, the decision of the Commonwealth Court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.[11]

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice NEWMAN files a dissenting opinion.

NEWMAN, Justice, dissenting.

Ruth J. Walker (Appellant) tripped and fell on a sidewalk adjacent to 5119 Chestnut Street in the City of Philadelphia. She sued the property owners and the City, alleging in her Complaint that she sustained "severe and debilitating personal injuries" because the sidewalk was in a "broken, cracked and depressed" condition. Reproduced Record at 9. Following trial, the Court of Common Pleas of Philadelphia County (trial court) entered judgment against the property owners in the amount of $15,000.00. It entered judgment in favor of the City, holding that the local agency enjoyed complete immunity because it did not own the property abutting the sidewalk and that it did not own the portion of Chestnut Street at issue in

highways are governed by the same construct under the State Highway Law. *See, e.g.,* 36 P.S. § 670–416 (authorizing Commonwealth to aid township authorities in construction of sidewalks along designated state highways in certain circumstances; such sidewalks are then considered part of state highway system).

11. Appellant also raises a claim concerning which party had the burden of proving ownership of the sidewalk. Given our disposition, we need not reach this issue.

this matter, which has been designated a state highway. On appeal, the Commonwealth Court affirmed. The Majority now reverses the Order of the Commonwealth Court and determines that the City of Philadelphia must be deemed to own the portion of Chestnut Street alongside which Appellant Ruth J. Walker was injured. I respectfully disagree.

Appellant asserts, and the Majority agrees, that the following exception to governmental immunity set forth in Section 8542(b) of the Judicial Code, 42 Pa.C.S. § 8542(b), applies here:

> (b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . .
>
> (7) Sidewalks.—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

With regard to the instant matter, the most salient feature of the sidewalks exception is that it distinguishes between primary and secondary liability. While primary liability is not at issue here, the Majority believes that the City can be held secondarily liable to Appellant because of its authority to require owners of property adjacent to Chestnut Street to repair their sidewalks. I do not believe that the exception applies in this case because a municipality is not responsible for state highways located within the municipality. Pursuant to Pennsylvania law, state highways are the property of the

Commonwealth. *Greene County v. Center Township,* 305 Pa. 79, 157 A. 777 (1931). "The Commonwealth has the exclusive duty for the maintenance and repair of state highways." *Allen v. Mellinger,* 156 Pa.Cmwlth. 113, 625 A.2d 1326 (1993), *petition for allowance of appeal denied,* 537 Pa. 653, 644 A.2d 738 (1994) (citing *Shollar v. Department of Transportation,* 70 Pa.Cmwlth. 243, 453 A.2d 24 (1982)). I agree with the Commonwealth Court that, consistent with its decisions in *Bruce v. Gadson,* 127 Pa.Cmwlth. 159, 561 A.2d 74 (1989), and *Lyons v. City of Philadelphia,* 159 Pa.Cmwlth. 107, 632 A.2d 1006 (1993), the adoption of Chestnut Street as a state highway means that the sidewalks adjacent to it do not fall within the limited exception set forth in Section 8542(b)(7) of the Judicial Code. "The clear language of the sidewalk exception requires that the local agency own the sidewalk right-of-way." *Bruce* at 75.

Exceptions to governmental immunity are to "be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability." *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118, 1123 (1987). Because existing case law supports the proposition that state highways are state property, *Greene County,* a narrow reading of Section 8542(b)(7) leads to the conclusion that the City of Philadelphia does not own the portion of Chestnut Street at issue in this case. Therefore, the City cannot be held secondarily liable for the injuries that Appellant sustained when she fell on a cracked sidewalk adjacent to privately owned real estate.

A determination that the Commonwealth owns the portion of Chestnut Street where Appellant fell leads to the conclusion that she may recover damages only from the owners of the property adjacent to the sidewalk. While Section 8542(b)(7) imposes secondary liability on a local agency "by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons," only primary liability is imposed upon the Commonwealth for a dangerous condition of its sidewalks. Section 8544(b) of the Judicial Code, 42 Pa.C.S. § 8522(b) provides in relevant part:

(b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised by claims for damages caused by:

. . .

(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency. . . .

Because the Commonwealth does not own the property at 5119 Chestnut Street, it cannot be held primarily or secondarily liable to Appellant for her injury. I recognize the unfairness of the fact that if Appellant had fallen one block south of Chestnut Street on a sidewalk adjacent to a road owned by the City of Philadelphia, then imposition of secondary liability on the local agency would be permitted pursuant to the exception to governmental immunity set forth in Section 8542(b)(7). However, because we must read exceptions to immunity narrowly, *Mascaro,* Appellant may only seek damages from the property owners.

Accordingly, I respectfully dissent and would affirm the Order of the Commonwealth Court.