# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barry M. Stock,                 :
               Petitioner       :
                              :
         v.                   :    No. 415 C.D. 2015
                              :    Submitted: November 6, 2015
Unemployment Compensation     :
Board of Review,               :
               Respondent    :

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION BY JUDGE BROBSON**       **FILED: April 8, 2016**

Petitioner Barry M. Stock (Claimant), acting *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board), which affirmed a decision of an unemployment compensation referee (Referee), denying Claimant benefits pursuant to Sections 4(u), 401, 401(c), and 404(d) of the Unemployment Compensation Law[2] (Law). The Referee also assessed a non-fraud overpayment of Emergency Unemployment Compensation (EUC) benefits in the

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 753(u), 801, 801(c) and 804(d). Section 401 of the Law provides, in part, that "compensation" shall be payable to an employee who is or becomes unemployed. Section 4(u) of the Law defines the term "unemployed." Section 404(d) of the Law provides, in part, that an eligible employee who is unemployed shall be paid compensation in an amount equal to his weekly benefit rate less any remuneration "paid or payable to him with respect to such week for services performed which is in excess of his partial benefit credit."

amount of $9,163 and Federal Additional Compensation (FAC) benefits in the amount of $300 under Section 4005 of the Emergency Unemployment Compensation Act of 2008 (EUC Act).[3] The Board did not impose any penalty weeks or financial penalties pursuant to Sections 801(b) or 801(c) of the Law[4] and Section 4005(a)(1) of the EUC Act. For the reasons set forth below, we now vacate the Board's order and remand the matter to the Board.

On September 23, 2014, the Scranton UC Service Center (Service Center) issued several notices of determination to Claimant relating to a fraud overpayment of benefits. (Certified Record (C.R.), Item No. 6) A notice of determination of earnings showed that Claimant's weekly benefit rate was $539,

---

[3] Title IV of the Supplemental Appropriation Act of 2008, Public Law 110-252, 122 Stat. 2323. The provisions of the EUC Act are found in the Note to 26 U.S.C. § 3304. EUC benefits are federally funded and were created by Congress pursuant to the EUC Act. *McKenna v. Unemployment Comp. Bd. of Review*, 981 A.2d 415, 417 (Pa. Cmwlth. 2009). The EUC benefits programs are administered by the states. *Id.* In Pennsylvania, unemployed claimants who are not eligible for regular unemployment compensation (UC) benefits from Pennsylvania, another state, the federal government, or Canada may be eligible for EUC benefits. *Id.* Eligibility requirements for receipt of regular UC benefits are also applicable to EUC benefits, along with additional requirements imposed by the EUC Act. *Id.* Section 4001(d)(2) of the EUC Act provides that the terms and conditions of the state law which apply to claims for regular UC benefits apply to claims for EUC benefits.

Section 2002(f) of the American Recovery and Reinvestment Act of 2009 (ARRA), P.L. No. 111-5, 123 Stat. 115 (2009), provides for FAC benefits in the amount of $25 per week to individuals otherwise entitled to compensation under state law. The provisions of the ARRA are found in the Note to 26 U.S.C. § 3304. ARRA also provides that overpayments of FAC benefits shall be recovered in the same manner as EUC overpayments. Note to 26 U.S.C. § 3304. Thus, for purposes of our review, it is irrelevant whether the overpayments were of EUC benefits or FAC benefits.

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 871(b) and (c). Section 801(b) of the Law relates to the assessment of penalty weeks, and Section 801(c) of the Law relates to the assessment of financial penalties.

2

his partial benefit credit was $216, and he "worked but knowingly failed to report all earnings and therefore, failed to file a valid claim for compensation" as a result of work performed for North Central Highway Safety Network (Employer). (C.R., Item No. 6 at Form UC-44(1).) The notice relating to EUC benefits indicated that Claimant reported no earnings over a period of 17 weeks from January through May 2009, although he actually received gross earnings for each of those weeks in the amount of $360 per week, with the exception of three weeks during which he earned $357, $432, and $450. (*Id.*) Notices of determination of overpayment of benefits (EUC and FAC) informed Claimant that the Service Center had determined that Claimant received a total of $9,163 in EUC benefits and $300 in FAC benefits to which he was not entitled as a result of his knowingly failing to report gross earnings from Employer. (C.R., Item No. 6 at Form UC-44(12) EUC REV 7-08 and Form UC-44(12) FAC 4-10.) Because the Service Center determined that the overpayment constituted a "fraud overpayment," Claimant was "subject to the penalty, repayment, and recovery provisions of Sections 4005(a), 4005(b), and 4005(c) of the EUC Act" of 2008. (*Id.*) As a result of these determinations, the Service Center imposed a 15% penalty. (C.R., Item No. 6 at Form UC-44(PS) 05-14.)

Claimant appealed, asserting that all wages were reported because Employer reports them and that he had contacted unemployment compensation authorities when he began working part-time and was told to continue filing weekly claims "as is." (C.R., Item No. 6 at Pet. for Appeal.) He further explained that he was told that he would be contacted later to adjust any overpayment, but he had not been contacted until the notices of determination were issued.

3

A Referee conducted an evidentiary hearing to consider: (1) whether Claimant "received benefits to which he was not entitled" and "whether fault or nonfault provisions should govern the recoupment of compensation;" (2) whether Claimant is entitled to EUC benefits; and (3) whether Claimant "knowingly made a false statement or knowingly failed to disclose a material fact in order to obtain or increase benefits and is thereby subject to an additional period of disqualification." (C.R., Item Nos. 10, 13.) During the hearing, the Referee received testimony from Claimant, Employer's executive director, and an unemployment compensation claims adjuster.

By decision and order dated December 24, 2014, the Referee affirmed in part, affirmed as modified, and reversed in part, the Service Center's determinations. The Referee concluded that Claimant was disqualified from receiving EUC and FAC benefits with respect to the 17 weeks at issue and that Claimant had a *non-fraud overpayment* of EUC and FAC benefits in the amounts of $9,163 and $300, respectively. The Referee concluded that no penalty weeks or amounts should be assessed against Claimant in the context of EUC benefits.

In support of those conclusions, the Referee made the following findings of fact:

1. With respect to the period at issue the claimant's weekly benefit rate for EUC benefits was $593 and his partial benefit credit was $215.[5]

2. With respect to each of the weeks at issue the claimant was working part time as an accountant for employer, North Central Highway Safety Network.

---

[5] In actuality, it appears that Claimant's partial benefit credit was $216. (C.R., Item No. 6 at Form UC-44(1).)

4

3.   As agreed by the claimant, the employer and the department had part-time earnings as indicated in the determinations of the UC Service Center.

4.   When filing his claims for benefits, mostly on line the time it was first done, the claimant filed for partial benefits he reported that he was partially unemployed and he honestly believed that this was all that he had to do and essentially that the matter would be adjusted by the UC Service Center.

5.   The claimant with respect to all the weeks at issue and with respect to both EUC and FAC benefits did not file claims for benefits in a proper manner.

6.   As a result of the foregoing, the claimant received an overpayment of EUC benefits in a total amount of $9,163 and of FAC benefits in a total amount of $300.

7.   *The claimant did not knowingly or intentionally give false information or withhold information in order to obtain the benefits nor did the claimant in any way fraudulently obtain EUC or FAC benefits.*

(C.R., Item No. 14 (emphasis added).)

The Referee reasoned, in part:

In the instant case it is clear from the testimony and evidence of all parties that the claimant did not file claims for benefits in a proper manner with regard to reporting earning[s] with respect to the weeks at issue so that the claimant is properly disqualified from receiving EUC and FAC benefits in accordance with the foregoing provisions of the Pennsylvania Unemployment Compensation Law.

The Referee is persuaded that the claimant made an *hones[t] mistake* with regard to the reporting in the instant case and that there should be no fraud overpayment but rather a non-fraud overpayment in the amount of $9,163 with regard to EUC benefits and in the amount of $300 with regard to FAC benefits in accordance with Section 4005 of the EUC Act.

5

> The Referee is not persuaded that in an EUC context with Sections 801(b) and 801(c) of the Pennsylvania Unemployment Compensation Law that any penalty weeks or financial penalty weeks should be assessed to the claimant.

(*Id.* (emphasis added).)

Claimant appealed to the Board, essentially arguing that the Referee erred in disqualifying him from receiving *all* of the 2009 EUC and FAC benefits that he had received. Claimant contended that, instead of being disqualified from receipt of all benefits for that 17-week period, which resulted in a non-fraud overpayment amount of $9,163, he should be permitted to settle the overpayment by reimbursing the difference between the amount that he received and the amount that he should have received had his part-time wages been properly reported, for a difference of $2,607. By decision and order dated February 18, 2015, the Board affirmed the Referee's determination and adopted the Referee's findings and conclusions. Claimant then petitioned this Court for review.[6]

On appeal,[7] Claimant again argues that the Board erred in disqualifying him as to *all* EUC and FAC benefits that he received while employed part-time during 2009, and he requests that he be permitted to reimburse the overpayment of wages in excess of the partial benefit.[8] (Claimant's Pet. for

---

[6] The Board denied Claimant's request for reconsideration. (C.R., Item No. 19.)

[7] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[8] The Board argues that Claimant failed to preserve this issue because the only issue he raised before the Referee was that the Service Center erred in determining that the overpayments constituted fraud overpayments rather than non-fraud overpayments. We disagree. Claimant **(Footnote continued on next page…)**

6

Review at 4.)  The Board counters that Claimant's failure to report his part-time earnings when filing and collecting benefits for 17 weeks renders him completely ineligible for benefits under Section 401(c) of the Law and Section 4005(a) of the EUC Act.[9]  The Board cites this Court's decision in *Smith v. Unemployment Compensation Board of Review*, 500 A.2d 186 (Pa. Cmwlth. 1985), in support of its position.

> Section 401(c) of the Law provides, in part:
>
> Compensation shall be payable to any employe who is or becomes unemployed, and who . . . [h]as made a valid application for benefits with respect to the benefit year for which compensation is claimed and has made a *claim for compensation in the proper manner* and on the form prescribed by the department.

(Emphasis added.)  Section 4005 of the EUC Act governs repayment and recovery of EUC benefits and provides, in part:

---

**(continued…)**

admitted to receiving overpayments and, in addition to arguing that the Service Center erred in concluding that the overpayments constituted fraud overpayments, he also contended that he should be permitted to pay back the overpayments that he tried to pay back starting in January 2009—meaning pay back the difference between the amount that he received and the amount that he should have received had his part-time wages been properly reported. (*See* C.R., Item No. 13 at 11.)  Claimant calculates the amount of overpayment to be $2,607, which results from the part-time wages of $6,279 less the partial weekly benefit allowed of $3,672. (*See* Pet'r's Br. at 9.)

[9] Although the Board cites Section 4005(a) of the EUC Act, that section relates to ineligibility for EUC benefits when an "individual knowingly has made . . . a false statement." That section does not appear to be applicable to the matter now before the Court, because, here, the Referee found that Claimant "made an honest mistake" and "did not knowingly or intentionally give false information or withhold information." (C.R., Item No. 14.)  We will analyze the arguments under Section 4005 generally.

7

(a)  IN GENERAL.—If an individual *knowingly has made . . . a false statement or representation of a material fact*, . . . and as a result of such false statement or representation or of such nondisclosure such individual has received an amount of emergency unemployment compensation under this title to which such individual was not entitled, such individual—

> (1)  Shall be ineligible for further emergency unemployment compensation under this title in accordance with the provisions of the applicable State unemployment compensation law relating to *fraud* in connection with a claim for unemployment compensation;
>
> . . .

 (b)  REPAYMENT.—In the case of individuals who have received *amounts of emergency unemployment compensation under this title to which they were not entitled*, the State shall require such individuals to repay the amounts of such emergency unemployment compensation to the State agency, except that the State agency may waive such repayment if it determines that—

> (1)  The payment of such emergency unemployment compensation was *without fault* on the part of any such individual; and
>
> (2)  Such repayment would be contrary to equity and good conscience.

(c) RECOVERY BY STATE AGENCY.—

> (1) IN GENERAL.—The State agency may recover the amount to be repaid, or any part thereof, by deductions from any emergency unemployment compensation payable to such individual under this title or from any unemployment compensation payable to such individual under any State or Federal unemployment compensation law administered by the State agency or under any other State or Federal law administered by the State agency which provides for the payment of any assistance or allowance with respect to any week of unemployment, during the 3-year period after the

8

date such individuals received the payment of the emergency unemployment compensation to which they were not entitled . . . .

Section 4005 of the EUC Act, which applies to EUC benefits, is similar to Section 804 of the Law,[10] which applies to unemployment compensation benefits.  Both sections provide that if there is a fault overpayment, the claimant must repay the amount to which he was "not entitled," but that a claimant is not liable to repay a non-fault overpayment.  Instead, non-fault overpayments shall be recouped from future benefits payable to the claimant, provided that the amount is recouped within the three-year period following the benefit year at issue.  *Id.*

As the Board properly observes, this Court has applied Section 401(c) of the Law's requirement that a claimant make a "claim for compensation in the proper manner" to render a claimant *totally* ineligible for unemployment compensation benefits.  *See Smith*, 500 A.2d at 189-90 (explaining that "concealment of earnings from employment results in loss of eligibility because the claim has not been made 'in the proper manner'" and that ineligibility under

---

[10] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 874.  Section 804(a) of the Law provides, in part, that "[a]ny person who by reason of his fault has received any sum as compensation under [the Law] to which he was not entitled, shall be liable to repay . . . a sum equal to the amount so received by him and interest."  Pursuant to Section 804(b)(1) of the Law, however, if a person has received compensation to which he was not entitled "other than by reason of his fault," he "shall not be liable to repay such sum but shall be liable to have such sum deducted from any future compensation payable to him with respect to such benefit year, or the three-year period immediately following such benefit year."  "The word 'fault' within the meaning of Section 804(a) connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches.  To find 'fault' under Section 804(a), there must be some finding by the referee or the Board concerning the claimant's state of mind." *Amspacher v. Unemployment Comp. Bd. of Review*, 479 A.2d 688, 691 (Pa. Cmwlth. 1984) (citations omitted).

9

Section 401(c) "is *total*, rather than dependent upon the relationship between the unreported amount and the partial benefit credit" (emphasis added)). Specifically, our Court has applied this concept of "total ineligibility" when a claimant has been found to have *knowingly* withheld information regarding part-time earnings and, therefore, received a *fault* overpayment of unemployment compensation benefits under Section 804(a) of the Law. *See Smith*, 500 A.2d at 189; *see also Amspacher v. Unemployment Comp. Bd. of Review*, 479 A.2d 688, 690-91 (Pa. Cmwlth. 1984) (holding that claimant who withheld information regarding part-time employment was ineligible for unemployment compensation benefits because claimant did not make claim in proper manner as required by Section 401(c) and was, therefore, ineligible for benefits for weeks in which he withheld this information);[11] *Rohrbach v. Unemployment Comp. Bd. of Review*, 450 A.2d 323, 325 (Pa. Cmwlth. 1982) (holding that "a claimant is disqualified from receiving unemployment compensation benefits for those weeks in which she fails to report earnings" and subject to recoupment of fault overpayment under Section 804(a) of Law). We have similarly extended the concept of "total ineligibility" to situations involving

---

[11] In *Amspacher*, we explained:

A claimant seeking unemployment compensation benefits is required to divulge to the [Office of Employment Security (OES)] all pertinent information regarding the claimant's employment status. This information is required so that the OES may make an intelligent and informed determination as to the claimant's eligibility for benefits and computation of a weekly benefit rate and partial benefit credit. This requirement which is imposed upon claimants recognizes the Commonwealth's interest in unemployment compensation and assists in fulfilling the Commonwealth's duty to protect the unemployment compensation fund against dissipation by those not entitled to benefits under the law.

*Amspacher*, 479 A.2d at 690-91.

EUC benefits where a claimant has been found to have knowingly made a false statement or representation of a material fact regarding part time earnings and, therefore, received a *fraud* overpayment of EUC benefits under Section 4005 of the EUC Act. *See Hanna v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., Nos. 1677, 1678, 1679, 1680, 1681, 1682, and 1683 C.D. 2014, filed July 8, 2015); *Riebling v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 1751 C.D. 2010, filed July 26, 2011). We have not, however, considered whether the concept of "total ineligibility," as described in *Smith*, is equally applicable to situations where a claimant receives EUC benefits to which he was "not entitled" due to an "honest mistake" on his part and not due to fraud or fault.

When interpreting a statute, this Court is guided by the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991, which provides that "the object of all interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa. C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines, Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa. Cmwlth.), *appeal denied*, 685 A.2d 547 (Pa. 1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa. C.S. § 1922(2). Thus,

11

no provision of a statute shall be "reduced to mere surplusage." *Walker*, 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922(1).

An examination of the statutory language reveals that neither Section 401(c) of the Law nor Section 4005 of the EUC Act speak in terms of "total ineligibility" or describe the manner in which the amount of the overpayment shall be calculated. Pertinent to our analysis, Section 401(c) of the Law merely provides that a claimant must file a "claim for compensation in the proper manner," and Section 4005 of the EUC Act provides for the repayment and recovery of the amount of "compensation to which [claimants] were not entitled" without defining that phrase. Thus, in order to determine the amount of EUC benefits that may be recovered from Claimant, we must engage in statutory construction.

By applying the reasoning set forth in *Smith*, this Court has essentially interpreted Section 4005(b) of the EUC Act's phrase "compensation . . . to which [a claimant was] not entitled" in the context of fault overpayments to include *all* EUC benefits that a claimant received during any week in which the claimant failed to make a "claim for compensation in the proper manner" as required by Section 401(c) of the Law. *See Hanna*; *Riebling*. Thus, if a claimant acted in a culpable manner and knowingly withheld earnings information that the claimant was required to provide, thereby receiving a fraud overpayment, the claimant is deemed ineligible for *any* compensation during those weeks. In such an instance, the repercussion for the culpable conduct is greater than merely being required to pay back any amounts that the claimant would not have received if the claimant

12

had properly reported his earnings. The concept of total ineligibility, therefore, allows for the recovery of compensation by unemployment authorities and also serves as a punishment for and deterrent to the culpable withholding of earnings information. In the context of fraud overpayments, such an interpretation of the phrase "compensation . . . to which [a claimant was] not entitled" is reasonable. As this Court in *Smith* observed, we are mindful that we "should preserve every incentive which the Law contains to encourage full and open disclosure by a claimant." *Smith*, 500 A.2d at 190-91.

The concept of "total ineligibility" in the context of *non-fraud* overpayments, however, would not serve the same purposes as it does in a *fraud* overpayment situation. In a non-fraud overpayment situation, there is no deterrent purpose to be served, because the underlying conduct (failure to report earnings) was done without any fraud or fault, meaning that the claimant did not knowingly or intentionally withhold information that he was required to provide. Similarly, it would not be reasonable to apply the "total ineligibility" concept as a punishment, because, again, the underlying conduct was not done knowingly or intentionally. Instead, in these situations, it is more reasonable to require a claimant to be subject to recoupment for the amount he would not have received if he had properly reported his earnings. Such an interpretation allows for monies to be recouped by unemployment authorities while being mindful of the well-recognized notion that the "Law is remedial legislation whose benefit provisions are to be construed liberally in the claimant's favor." *Amspacher*, 479 A.2d at 690 (citing *Micciche v. Unemployment Comp. Bd. of Review*, 461 A.2d 914 (Pa. Cmwlth. 1983)). This notion is particularly applicable where the claimant has not engaged in any culpable conduct. To interpret the phrase "compensation to which [claimants]

13

were not entitled" in a manner which serves to punish a claimant for non-culpable conduct would lead to an absurd and unreasonable result, clearly not intended by the General Assembly.

For the reasons set forth above, we agree with Claimant that the Board erred in disqualifying him as to *all* benefits that he received while employed part-time during 2009. Instead, the Board should have calculated the non-fraud overpayment by first determining the amount of EUC and FAC benefits that Claimant would have received had he properly reported his part time earnings and then subtracting that amount from the amount Claimant actually received. The difference between these sums would equal the amount of the non-fraud overpayment.

Accordingly, the order of the Board is vacated and the matter is remanded to the Board for a recalculation of the amount of Claimant's non-fraud overpayment.


_____
P. KEVIN BROBSON, Judge


14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barry M. Stock,                    :
              Petitioner           :
                                   :
       v.                          :     No. 415 C.D. 2015
                                   :
Unemployment Compensation          :
Board of Review,                   :
              Respondent           :

# **O R D E R**

AND NOW, this 8th day of April, 2016, the order of the Unemployment Compensation Board (Board) of Review is hereby VACATED and the matter remanded to the Board for a recalculation of the amount of Petitioner's non-fraud overpayment consistent with the attached Opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge