Mark Anthony PERROTTA

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 21, 2014.

Decided Feb. 25, 2015.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellant.

Charles G. Nistico, Media, for appellee.

BEFORE: RENÉE COHN JUBELIRER, Judge, P. KEVIN BROBSON, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (PennDOT), appeals from an order of the Court of Common Pleas of Delaware County (trial court), granting Mark Anthony Perrotta's (Licensee) appeal from a denial of license. For the reasons discussed below, we affirm.

PennDOT alleges that Licensee has held three different licenses under three different names in the last twenty-five years. According to PennDOT, Licensee first applied for and received a license in 1991 under the name of Mark N. Perrotta. In 1999, PennDOT issued Licensee a second license, under his own name, Mark Anthony Perrotta. In 2001, PennDOT cancelled the 1991 license for fraud and merged the 1991 and 1999 license records, thus assigning some fourteen violations to Licensee's driving record. PennDOT suspended the 1999 license in August 2001. Licensee then secured a third license in 2002, under his deceased brother's name, Louis Frank Perrotta. PennDOT revoked the 1999 license in August 2003, and the license remains revoked to this day. PennDOT cancelled the 2002 license for fraud in May 2012, and merged the 1999 and 2002 license records. Licensee was prosecuted for fraud in association with the 2002 li-

cense and pled guilty. Thus, Licensee's only remaining license, the 1999 license issued in his own name, is currently revoked.

On December 17, 2012, PennDOT notified Licensee that it was considering declaring Licensee permanently ineligible to obtain a Pennsylvania driver's license and that it had scheduled a hearing for February 19, 2013. Licensee attended the hearing without counsel. Following the hearing, PennDOT sent Licensee an Official Notice of Denial, dated April 10, 2013, stating that Licensee's "ability to obtain an Initial Issuance, Renewal or Duplicate" of his license was being denied "as a result of [his] repeated violations of Chapter 15 of the Pennsylvania Vehicle Code" (Code).[1] (Reproduced Record (R.R.) 7a.) The Official Notice of Denial cited Section 1503(a)(8) of the Code[2] as the authority for PennDOT's actions. Section 1503(a)(8) of the Code provides that PennDOT "shall not issue a driver's license to, or renew the driver's license of, any person ... [w]ho has repeatedly violated any of the provisions of this chapter. [PennDOT] shall provide an opportunity for a hearing upon invoking this paragraph."

Licensee appealed the notice of denial to the trial court, and the trial court conducted a hearing on December 9, 2013. At the hearing, Licensee argued that PennDOT's action was premature, because his license was currently revoked and would remain so until December 21, 2014.[3] Licensee

argued that when a license is revoked, no license exists, and, therefore, until Licensee becomes eligible to apply for a license, PennDOT cannot deny his ability to obtain a license. Licensee reasoned that "you can't cancel something you don't have." (R.R. 19a.) PennDOT argued that there was "no sense in waiting" until Licensee applied for a license (R.R. 34a), and that Section 1503(a)(8) of the Code authorized PennDOT to deny Licensee a license "without regard" for whether or not his license was revoked. (PennDOT Br. at 10.) The trial court ordered the parties to submit briefs addressing the issue and declined to take any testimony or admit any evidence concerning the merits of the case.[4]

On April 3, 2014, the trial court issued an order granting Licensee's appeal. The trial court reasoned that PennDOT's actions were premature:

> In light of Perrotta's operating privileges being revoked, PennDOT cannot cancel Perrotta's driver's license until his operating privileges are restored on December 22, 2014. Thus, PennDOT's actions are premature. PennDOT is improperly attempting to prohibit Perrotta from renewing or obtaining a driver's license which he cannot do because Perrotta's operating privileges are already currently under revocation until December 21, 2014. It is clear from [Sections 102 and 1503(a)(8) of the Code[5]] that

1. 75 Pa.C.S. §§ 101–9805.

2. 75 Pa.C.S. § 1503(a)(8).

3. In its brief to this Court, PennDOT asserts that Licensee's revocation will not end until February 16, 2016.

4. The record on appeal to this Court, therefore, contains only the procedural record of the case below—the notice of denial, the appeal to the trial court, the transcript of the hearing, the briefs submitted to the trial

court, and the trial court's order and opinion. Notably absent from the record on appeal is Licensee's driving record.

5. Section 102 of the Code, 75 Pa.C.S. § 102, contains definitions of the terms "suspend" and "revoke" as used in the Code. "Suspend" means "[t]o withdraw temporarily by formal action of the department any license, registration or privilege issued or granted by the department. Following a period of suspension, the department shall restore the license,

Perrotta must be eligible to obtain a driver's license before PennDOT can take that eligibility away. Therefore, PennDOT's attempt to deny Perrotta's ability to renew or obtain a driver's license is premature because at the moment, Perrotta does not currently have a driver's license.

(R.R. 91a–92a.)

■ On appeal,[6] PennDOT argues that the trial court abused its discretion and/or erred as a matter of law in interpreting Section 1503(a)(8) of the Code, because (1) it failed to give the proper deference to PennDOT's interpretation of the Code, and (2) it added into the Code terms the legislature did not include.

■ When interpreting a statute, this Court is guided by the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 577 Pa. 104, 842 A.2d 389, 400 (2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa.C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines, Inc.*

*v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa.Cmwlth.), *appeal denied*, 546 Pa. 668, 685 A.2d 547 (1996). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). It is presumed "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). Thus, no provision of a statute shall be "reduced to mere surplusage." *Walker*, 842 A.2d at 400. Finally, it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

■ At issue here are the circumstances under which PennDOT may invoke Section 1503(a)(8) of the Code, a question of first impression. PennDOT is, under a plain reading of the statutory language, required to deny a license to any person falling within the provisions listed in Section 1503(a) of the Code. *See* 75 Pa.C.S. § 1503(a)(1)-(9). Specifically, the Code provides that PennDOT "shall not issue a driver's license to, or renew the driver's license of," persons described in Section 1503(a). 75 Pa.C.S. § 1503(a). Neither an initial issuance nor a renewal happens automatically; the process for each is initiated by the person seeking the license or renewal when he or she files an application. *See* 75 Pa.C.S. § 1510(a) ("The department shall, upon payment of the required fee, issue to every qualified *applicant* a driver's license ....." (emphasis added)); 75 Pa.C.S. § 1514(a) ("Every license shall be renewable on or before its expiration *upon ap-*

---

registration or privilege." *Id.* "Revoke" means "[t]o terminate by formal action of the department any license, registration or privilege issued or granted by the department. Following a period of revocation, the license, registration or privilege may not be restored except upon submission and acceptance of a new application." *Id.*

**6.** Questions of statutory interpretation are questions of law subject to plenary review. *Mohamed v. Dep't of Transp., Bureau of Motor Vehicles*, 615 Pa. 6, 40 A.3d 1186, 1192–93 (2012).

*plication,* payment of the required fee, and satisfactory completion of any examination required or authorized by this chapter." (emphasis added)). An application is, therefore, a prerequisite to the issuance or renewal of any driver's license. Without an application pending before it, PennDOT has nothing to respond to and thus nothing it could deny.

Furthermore, it is clear when viewed in the context of the entire Code that the legislature intended Section 1503(a)(8) of the Code to be invoked only when Penn-DOT has been presented with an application for a license or renewal that it must either grant or deny. The Code provides for several actions PennDOT may take in regards to a license, such as denial, issuance, renewal, suspension, revocation, cancellation, and determination of incompetency. These actions are all addressed in various sections of the Code: Section 1503(a)[7] addresses denial of a license or renewal; Section 1510[8] addresses issuance of a license; Section 1514[9] addresses renewal; Sections 1532, 1533, 1539 and 1543[10] address suspension; Sections 1542 and 1543[11] address revocation; Section 1572[12] addresses cancellation; and Section 1519[13] addresses incompetency. These sections are easily divisible into two groups based upon the plain text of the Code: those which occur in response to an application for a license or renewal, and those which are taken against an already-issued license. The text of Sections 1532, 1533, 1539, 1542, 1543 and 1572 of the Code do not refer to the issuance or renewal of a license; these are, therefore, actions taken by PennDOT against cur-

rently-issued licenses. Sections 1503(a), 1510, and 1514 of the Code, in contrast, all deal with the issuance or renewal of a license. Thus, the legislature clearly intended for some actions to occur only when issuing or renewing a license, and a denial under Section 1503(a)(8) is one of those actions.

 Lastly, nothing in the Code authorizes PennDOT to judge preemptively the eligibility of potential drivers in the Commonwealth. Indeed, to do so would be an enormous waste of departmental resources, as not every potential driver chooses to apply for a license or renewal. We interpret Section 1503(a)(8) of the Code, therefore, as requiring a person to first submit an application for a license or renewal before PennDOT invokes Section 1503(a)(8) to deny a person a license.

 PennDOT's arguments to the contrary are unpersuasive. First, Penn-DOT argues that its interpretation of Section 1503(a)(8) of the Code is entitled to deference from the Court because it is the agency charged with enforcing the Code. Generally speaking, the courts "defer to the expertise of the agency upon which the General Assembly has vested enforcement or interpretive responsibilities." *Packer v. Bureau of Prof'l & Occupational Affairs,* 99 A.3d 965, 969 (Pa.Cmwlth.2014) (citing Section 1921(c)(8) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c)(8)). Deference is not given, however, to agency interpretations which are erroneous or which frustrate legislative intent. *Id.* Furthermore, an agency interpretation of a statute expressed for the first time in an

7. 75 Pa.C.S. § 1503(a).

8. 75 Pa.C.S. § 1510.

9. 75 Pa.C.S. § 1514.

10. 75 Pa.C.S. §§ 1532, 1533, 1539, 1543.

11. 75 Pa.C.S. §§ 1542–43.

12. 75 Pa.C.S. § 1572.

13. 75 Pa.C.S. § 1519.

appellate brief is not entitled to any of the deference normally afforded to formal agency interpretations, such as regulations, or informal agency interpretations, such as policy statements. *Id.* at 970–71. ("In the absence of any regulations, rules, policy, or formal adjudication, we do not believe we owe the Board's new interpretation of a statute, expressed apparently for the first time in the context of a brief filed in response to an appeal from the Board's final order, any deference."). Ultimately, the meaning of a statute is a question of law for the courts. *See Borough of Pottstown v. Pa. Mun. Ret. Bd.,* 551 Pa. 605, 712 A.2d 741, 744 (1998).

In this case, we have no evidence that PennDOT has made a formal or informal interpretation of the Code. PennDOT has not offered any rules, regulations, or policy statements interpreting Section 1503(a)(8) of the Code. Instead, PennDOT appears to express its particular interpretation of Section 1503(a)(8) for the first time in its brief to this Court. PennDOT's interpretation, therefore, is not entitled to any deference. *See Packer,* 99 A.3d at 971. Furthermore, PennDOT's interpretation of Section 1503(a)(8), which would allow PennDOT to invoke proceedings under Section 1503(a)(8) whenever it chooses, is legally erroneous. As explained above, Section 1503(a)(8) may only be used by PennDOT to deny a person a license after that person has submitted an application requesting one. For these reasons, PennDOT's interpretation is not entitled to deference.

Second, PennDOT argues that requiring PennDOT to wait for an application to be filed impermissibly adds a time restriction to Section 1503(a)(8) of the Code. Penn-

DOT contends that Section 1503(a)(8) of the Code is silent as to when PennDOT can deny a person a license, and that because Section 1503(a)(8) is silent, the legislature did not intend to limit when PennDOT could proceed under it. As explained above, Section 1503(a) of the Code states that PennDOT shall not issue to or renew a license of specified persons. Issuance and renewal of licenses are both processes which begin only when a person submits an application, thus imposing an implicit restriction on PennDOT's ability to proceed under Section 1503(a)(8) of the Code. Because the restriction is implicit in the Code, requiring PennDOT to wait for an application does not impermissibly add a restriction not intended by the legislature.

 In this case, PennDOT issued an Official Notice of Denial to Licensee, informing him that he was ineligible to receive a driver's license under Section 1503(a)(8) of the Code. Because Licensee did not apply for a license or renewal, PennDOT's actions were premature. The trial court, therefore, did not abuse its discretion or err as a matter of law when it granted Licensee's appeal.[14]

For the reasons discussed above, we affirm the order of the trial court.

### *ORDER*

AND NOW, this 25th day of February, 2015, the order of the Court of Common Pleas of Delaware County is hereby AFFIRMED.

---

14. We note that the trial court concluded PennDOT's actions were premature because Licensee's license is currently revoked. We, however, do not base our decision on Licensee's revoked status; rather our decision is based upon the fact that Licensee has not applied for a license or a renewal of his license, and PennDOT may not invoke Section 1503(a)(8) unless and until Licensee applies.