# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Anthony Perrotta         :
                                  :
           v.              :    No. 1122 C.D. 2018
                                  :    Argued: March 14, 2019
Commonwealth of Pennsylvania,    :
Department of Transportation,      :
Bureau of Driver Licensing,        :
                       Appellant    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED:  August 14, 2019**

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals from the Order of the Court of Common Pleas of Delaware County (common pleas), dated July 19, 2018, which granted Mark Anthony Perrotta's (Licensee) application for supersedeas and appeal from the Department's denial of his applications for an ignition interlock and non-commercial learner's permit (Denial). The Department permanently denied Licensee's driving privileges pursuant to Section 1503(a)(8) of the Vehicle Code, 75 Pa. C.S. § 1503(a)(8), for repeated violations of Chapter 15 of the Vehicle Code by obtaining more than one false driver's license.

In addition to granting supersedeas, common pleas found that the Department did not meet its burden to support the Denial and violated Licensee's due process rights at the pre-Denial Department hearing. The Department

contends common pleas erred as a matter of law in reaching these conclusions. Upon review, we agree that the Department did not meet its burden to support the Denial. However, common pleas could not order the Department to grant a license to Licensee. Accordingly, we vacate that portion of the Order and instead order the Department to process Licensee's submitted applications and documentation for license restoration in accordance with the Department's governing regulations and procedures in light of the following opinion.

## I. Factual Background

### a. Perrotta I

Licensee and the Department have a contentious history. As recounted by this Court in *Perrotta v. Department of Transportation, Bureau of Driver Licensing*, 110 A.3d 255, 256 (Pa. Cmwlth. 2015) (*Perrotta I*), since 1991, Licensee has been issued three different licenses under three different names, two of which were not his own (false licenses).

> Licensee first applied for and received a license in 1991 under the name of Mark N. Perrotta. In 1999, [the Department] issued Licensee a second license, under his own name, Mark Anthony Perrotta [(true license)]. In 2001, [the Department] cancelled the 1991 license for fraud and merged the 1991 and 1999 license records, thus assigning some fourteen violations to Licensee's driving record. [The Department] suspended the 1999 License in August 2001. Licensee then secured a third license in 2002, under his deceased brother's name, Louis Frank Perrotta. [The Department] revoked the 1999 license in August 2003, and the license remains revoked to this day. [The Department] cancelled the 2002 license for fraud in May 2012, and merged the 1999 and 2002 license records. Licensee was prosecuted for [forgery[1]] in association with the 2002 license and pled

---

[1] The parties represented in the proceedings for *Perrotta I* that Licensee was convicted of fraud for one of the false licenses. In the present case, the parties use "fraud" and "forgery" **(Footnote continued on next page…)**

2

guilty. Thus, Licensee's only remaining license, the 1999 license issued in his own name[, the true license,] is currently revoked.[2]

*Id.* at 256-57. In 2013, the Department mailed Licensee a notice of denial informing him that he was being denied the ability to obtain a license pursuant to the Department's authority under Section 1503(a)(8). *Id.* at 257. Section 1503(a)(8) provides:

> (a) Persons ineligible for licensing.—The [D]epartment shall not issue a driver's license to, or renew the driver's license of, any person:
>
> . . . .
>
> (8) Who has repeatedly violated any of the provisions of this chapter.[3] The [D]epartment shall provide an opportunity for a hearing upon invoking this paragraph.

75 Pa. C.S. § 1503(a)(8).

Licensee appealed that notice, and common pleas granted the appeal. The Department, in turn, appealed to this Court, which affirmed, holding the Department did not have the authority under Section 1503(a)(8) to issue a notice of denial until Licensee had actually applied for a license. *Perrotta I*, 110 A.3d at

---

**(continued…)**

interchangeably when speaking about Licensee's conviction. In any event, common pleas found, based on a Department witness's testimony, that Licensee was convicted of forgery. (Common pleas' Finding of Fact (FOF) ¶ 102.) Licensee's criminal history record is not in the record before us, and we accept common pleas' conclusive finding, as the exact charge for which Licensee was convicted has no bearing on our analysis and conclusion.

[2] A revocation is a "formal action" to terminate a license. Section 102 of the Vehicle Code, 75 Pa. C.S. § 102. At the expiration of the revocation period, a licensee can only have operating privileges restored "upon submission and acceptance of a new application." *Id.*

[3] Chapter 15 governs driver's licensing. It includes, in pertinent part, requirements and procedures for license issuance, suspension, and revocation.

260. Because Licensee had not done so, we held the Department's actions were premature. *Id.*

Following *Perrotta I*, the Department mailed Licensee two Restoration Requirements Letters (Restoration Letters) in 2016, notifying Licensee of what he "must do to restore [his] driving privilege," which included paying a restoration fee, installing an ignition interlock system, and applying for an ignition interlock learner's permit. (May 29, 2018 Hearing, Exs. D1, D2.) Licensee complied with these requirements and submitted to the Department applications for an ignition interlock and a non-commercial learner's permit in December 2016. (Common pleas' Finding of Fact (FOF) ¶ 16.) The Department again denied Licensee's applications pursuant to Section 1503(a)(8), and Licensee appealed. Common pleas remanded the matter for a departmental hearing, as required under Section 1503(a)(8),[4] following which, the Department mailed Licensee the Denial on January 26, 2018, stating:

> This is an Official Notice of Denial of your ability to obtain an Initial Issuance, Renewal[,] or Duplicate of your Driver License. This [a]uthority is provided by Section 1503(a)(8) of the Pennsylvania Vehicle Code. This action is as a result of your repeated violations of Chapter 15 of the Pennsylvania Vehicle Code **by obtaining more than one false driver license** or identification card from the Department.

(Reproduced Record (R.R.) at 11a (emphasis added).) Licensee appealed to common pleas and filed an application for supersedeas.

---

[4] In the interim, Licensee again submitted a non-commercial learner's permit application, which the Department denied, before the Department provided the opportunity to schedule the hearing. (FOF ¶ 24; Reproduced Record (R.R.) at 395a-98a.)

### b. Hearings before common pleas

Common pleas held two hearings, the first on February 6, 2018, to consider Licensee's application for supersedeas, at which Licensee testified, and the second on May 29, 2018, for a de novo review of the merits of Licensee's appeal, at which the Department's witnesses testified. Common pleas did not make a decision on the application for supersedeas after the first hearing, waiting until after the hearing on the merits to issue the Order encompassing both.

At the supersedeas hearing, Licensee testified as follows. After receiving his most recent Restoration Letter, Licensee complied with the requirements set forth therein but did not receive a license when the suspension period expired. Licensee attended the Department hearing, at which the Hearing Officer and a note taker were present on the Department's behalf. The Department did not present witnesses or evidence; rather, the Hearing Officer asked a few informal questions to which Licensee responded and asked a couple questions of his own. Licensee requires a license in order to operate his plumbing business, as his employment requires him to drive to customers' homes. Licensee completed drug and alcohol rehabilitation classes after being released from prison and has not consumed any alcohol or drugs since then. (FOF ¶ 50.) Licensee did obtain the two false licenses and had other Chapter 15 violations on his driving record unrelated to the false licenses.[5] Licensee has not had any violations of the Vehicle Code since February 2006. (*Id.* ¶ 39.)

---

[5] At both the Department hearing and the supersedeas hearing, Licensee testified that some of the driving violations on his driving record, originating under Chapter 15 and elsewhere in the Vehicle Code, should be attributed to his deceased brother. Licensee reasoned that this error resulted from the merging of driving records when the false license he obtained in his deceased brother's name was cancelled. As discussed below, because the Department only **(Footnote continued on next page…)**

At the de novo hearing on the merits before common pleas, the Department presented the testimony of the Hearing Officer, the Director of the Department's Risk Management Office, the Section Manager of the Bureau of Driver Licensing, and an Administrative Officer, who also served as the note taker at Licensee's Department hearing. These witnesses testified about the Department hearing. Generally, Department hearings under Section 1503(a)(8) are an opportunity for a licensee to explain why the licensee has obtained multiple licenses. A hearing officer and note taker are present on the Department's behalf at Department hearings, but notes of testimony are not usually prepared,[6] and no written findings of fact are made. At Licensee's hearing, there was no sworn testimony, and the Department did not present any documents into evidence. Following a Department hearing, a hearing officer presents a summary of findings to a Department panel (Panel), which is comprised of an attorney from the Chief Counsel's Office, administrative officers, management officers, and a license control manager. The Panel makes the final determination, although the hearing officer does not have a vote in that process. The Panel considers the licensee's Chapter 15 violations, driver safety, and whether the false licenses create national security or public safety concerns. (*Id.* ¶¶ 87-88.)

The Department's witnesses who served on the Panel testified as follows to the particular considerations of Licensee's case. Licensee had various Vehicle Code violations, some of which were outside of Chapter 15. Licensee's Chapter

---

**(continued…)**
alleged it was denying the license on the basis of the false licenses, we need not determine which other Chapter 15 violations are properly attributed to Licensee.

[6] Hearing Officer testified that notes of testimony were prepared for Licensee's Department hearing only because the matter had been remanded by common pleas. (FOF ¶ 116.)

15 violations included one violation for failure to make a payment on a ticket under Section 1533 of the Vehicle Code; three violations for driving with a license suspended for driving under the influence (DUI) under Section 1543 of the Vehicle Code; and three violations for chemical test refusal under Section 1547 of the Vehicle Code, 75 Pa. C.S. §§ 1533, 1543, 1547.[7] (FOF ¶ 147.) The Panel considered **all** of Licensee's Chapter 15 violations, including those unrelated to the two false licenses. Licensee procured the false licenses due to "financial hardship," (*id.* ¶ 120), but had not used the false licenses to obtain credit cards. Licensee served four years in prison and successfully completed eight years of probation after his conviction in 2006. Licensee completed the requirements set forth in the Restoration Letters, but a license was not issued because the Department "was ordered . . . not to do anything regarding the processing of the Application until the [Section] 1503(a)(8) review began." (*Id.* ¶ 169.)

### c. *Order and Appeal*

Based on the testimony, common pleas issued findings of fact and its Order granting both the application for supersedeas and Licensee's appeal. Common pleas ordered the Department to remove from Licensee's driving status the designation of "suspended, revoked and expired," display Licensee's driving status as "restored," accept Licensee's applications for an ignition interlock and non-commercial learner's permit, and grant the license upon payment of costs.

---

[7] As for the non-Chapter 15 violations on Licensee's Driving Record, common pleas found that Licensee had 11 DUI convictions, pursuant to Sections 3731 and 3802 of the Vehicle Code, 75 Pa. C.S. §§ 3731, 3802, and 2 fleeing and eluding a police officer convictions under Section 3733 of the Vehicle Code, 75 Pa. C.S. § 3733. (FOF ¶ 142.)

The Department appealed, asserting, *inter alia*, in its statement of errors complained of on appeal (Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), that common pleas erred in determining the Department did not meet its burden to support the Denial and denied Licensee due process.[8]  In its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), common pleas first explained that the Department did not meet its burden to justify the Denial.  Common pleas recounted Licensee's Chapter 15 violations and acknowledged that any violations relating to controlled substances did not fall under the purview of Chapter 15.  Licensee did not use the false licenses to identify himself to police or to obtain credit cards, common pleas found, and it was "abundantly clear" that Licensee's reason for obtaining the false licenses was "solely based on financial hardship" and "so that he could work." (Rule 1925(a) Opinion (Op.) at 25.)  Further, common pleas reasoned that Licensee had no violations since February 2006, completed drug and alcohol classes, and consumed no alcohol or drugs.  Common pleas also noted that, under Section 1554 of the Vehicle Code, 75 Pa. C.S. § 1554, an individual may be eligible for a

---

[8] Because common pleas granted Licensee's application for supersedeas in the same Order in which it granted Licensee's appeal, the Department also asserted in its Statement that common pleas erred by granting Licensee the supersedeas.  Nonetheless, pursuant to Pennsylvania Rule of Appellate Procedure 1736(b), Pa.R.A.P. 1736(b), the Department's appeal to this Court operated as a supersedeas in its favor pending this Court's decision on the merits.  Therefore, upon the Department's appeal, Licensee filed with common pleas a petition to stay the Department's automatic supersedeas, which common pleas granted.  The Department then filed with this Court a Motion to Reinstate Automatic Supersedeas under Pa.R.A.P. 1736(b).  By opinion and order of a single judge of this Court dated November 20, 2018, we granted the Department's motion, vacated common pleas' order, lifted the stay entered by common pleas, and reinstated the automatic supersedeas pursuant to Pa.R.A.P. 1736(b).  *Perrotta v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1122 C.D. 2018, filed November 20, 2018) (*Perrotta II*).

8

probationary license if the individual has not had a violation for 6 years, even if the individual has 22 or more violations on the driving record for offenses enumerated in Sections 1532, 1539, and 1543 of the Vehicle Code, 75 Pa. C.S. §§ 1532, 1539, 1543.[9] Given this and Licensee's lack of violations since 2006, common pleas reasoned that the Department did not meet its burden for the Denial implementing a lifetime ban.

With regard to due process, common pleas explained that there was nothing in the record evidencing a written procedure for conducting Department hearings; rather, Department hearings under Section 1503(a)(8) were informal opportunities for licensees to "talk." (Rule 1925(a) Op. at 32.) Common pleas reasoned that this hearing, during which the Department called no witnesses nor presented any documentary evidence, was "not what due process requires." (*Id.*) Noting the Department's regulations for administrative practice, common pleas concluded that the Department did not follow those procedures. Common pleas determined that Licensee was denied due process in this "pro forma 'chat session,'" which did not provide him a meaningful opportunity to challenge the Department's Denial. (*Id.*)

Before this Court, the Department argues that common pleas erred by concluding that the Department: (1) did not meet its burden for the Denial; and (2) deprived Licensee of due process. Because the Department had the burden at the de novo hearing before common pleas to establish a basis for the Denial by a preponderance of the evidence, our review is based on the facts as found by

---

[9] Section 1532 relates to suspensions of operating privileges after conviction of enumerated crimes, which include, aggravated assault by vehicle while DUI, accidents involving death or personal injury, careless driving, and reckless driving. 75 Pa. C.S. § 1532. Section 1539 provides for suspension of operating privileges upon accumulation of points. 75 Pa. C.S. § 1539. Section 1543 creates an offense for driving while one's operating privilege is revoked. 75 Pa. C.S. § 1543.

common pleas. *See Rutkowski v. Dep't of Transp., Bureau of Driver Licensing*, 780 A.2d 860, 862 (Pa. Cmwlth. 2001). Our review of common pleas' "decision in a driver's license appeal is limited to a determination of whether findings of fact are supported by substantial evidence, [whether] an error of law was committed, or [whether] the court abused its discretion." *Fowler v. Dep't of Transp., Bureau of Driver Licensing*, 2 A.3d 1282, 1284 (Pa. Cmwlth. 2010).

## II. Discussion

### a. Parties' Arguments

The Department first claims common pleas erred because the Department met its burden for the Denial under Section 1503(a)(8), arguing as follows. Individuals are prohibited under Section 1501(c) of the Vehicle Code, 75 Pa. C.S. § 1501(c), from having two or more driver's licenses.[10] Licensee admitted, and common pleas found, that Licensee had two false licenses in violation of Chapter 15. Based on case law regarding the definition of "repeated," Licensee's actions in obtaining two false licenses are "repeated violations" warranting the Department's actions under Section 1503(a)(8). In addition, the Department argues additional considerations, such as security and public safety, also justify the Denial. As explained by one of Department's witnesses before common pleas, the Department considers driver safety and the "safety of the driving public" in a Section 1503(a)(8) analysis because "someone who would assume [false] identities" and then "incurs violations under the false identities should not be on the road."

---

[10] Section 1501(c) sets forth the general requirement that drivers be licensed and limits the number of licenses an individual may have, stating that "[n]o person shall be permitted to have more than one valid driver's license issued by this or any other state at any time." 75 Pa. C.S. § 1501(c).

(Department's Brief (Br.) at 14.) At argument before this Court, the Department elaborated on this argument, asserting that Section 1503(a)(8) is the mechanism through which the Department protects the integrity of the licensing system and deters future violations. The Department further argued that the Panel considers whether a licensee has demonstrated changed circumstances and good intentions for restoring the license and complying with the law in the future. In the Department's view, Licensee has repeated Chapter 15 violations and has not taken responsibility for his actions or shown remorse; thus, the Department believes it met its burden to justify the Denial.

Licensee asserts that common pleas correctly determined that the Department did not meet its burden and argues as follows. In relation to obtaining a license in his brother's name, Licensee was **charged with** violating **Section 1571** of the Vehicle Code, 75 Pa. C.S. § 1571, which makes it unlawful for an individual "[t]o exhibit or cause or permit to be exhibited or have in possession a fictitious or fraudulently altered driver's license." However, Licensee **pleaded guilty** to forgery under **Section 4101 of the Crimes Code**, 18 Pa. C.S. § 4101, which is **not** a Chapter 15 violation. Thus, Licensee does not have "**repeated**" Chapter 15 violations for false licenses to warrant the Denial. Moreover, even if all of Licensee's Chapter 15 violations reflected in his Driving Record are considered, this does not rise to the level of repeated violations contemplated by Section 1503(a)(8), particularly in light of the Department's admission that an individual with 22 offenses may still obtain a probationary license if all other requirements are met. 75 Pa. C.S. § 1554(b)(2)(iv). Further, a denial of operating privileges is a severe consequence, particularly when it is a lifetime ban, as it "affects a person's ability to earn a living, to raise a family, [and] . . . to move freely." (Licensee's Br.

11

at 8.) Common pleas correctly determined Licensee's violations are insufficient to deprive Licensee of his operating privileges for life because he "has done everything that the legislature has required[,] . . . rehabilitated himself, served 4 years in the state penitentiary, . . . and [he] should not be penalized additionally when not called for by the statute." (*Id.* at 9.) Licensee asks this Court to affirm common pleas' Order.

### b. *Licensee's Violations*

We initially examine which of Licensee's violations are before us for purposes of the Denial. It appears the Department Panel and common pleas considered **all** of Licensee's Chapter 15 violations. However, the Department, in its **notice** prior to the Department hearing and in the **Denial**, notified Licensee that the reason it was denying him a license was Licensee's "repeated violations of Chapter 15 of the Pennsylvania Vehicle Code **by obtaining more than one false driver license or identification card** from the Department." (R.R. at 11a, 373a (emphasis added).) Because these documents, by their plain language, gave notice that the Chapter 15 violations that supported the license denial were those relating to Licensee obtaining the false driver's licenses, we will consider only whether those Chapter 15 violations support the Denial.[11]

Although the parties argue whether it was Section 1501(c) or Section 1571 of the Vehicle Code that Licensee violated, we do not need to resolve that question. Licensee has admitted to obtaining the false licenses in violation of

---

[11] To the extent common pleas considered the other violations, the error was harmless. Common pleas granted Licensee's appeal despite considering all of the violations. Therefore, we must conclude that common pleas would have reached the same result had it only considered the false licenses.

12

Chapter 15, (FOF ¶¶ 57-58), and the exact section that he violated is not relevant for our analysis of the Denial. With this in mind, we turn to the Department's Denial, an action that **permanently** denies Licensee of his operating privileges.[12]

Common pleas concluded that the Department did not meet its burden for the Denial implementing a lifetime ban on Licensee's operating privileges. We agree. Outside of *Perrotta I*, the appellate courts have not interpreted Section 1503(a)(8). However, this Court and the Supreme Court have addressed the penalties of lifetime bans or permanent license revocations in other situations, including professional licensing and commercial driver's licensing. Although not squarely on point, these cases provide guidance on reviewing a license denial in light of the severity of the penalty.

### c. Revocations of Professional Licenses

This Court has noted that where statutes impose punishment, such as the revocation of a professional license,[13] they are penal in nature. *McGrath v. Bureau of Prof'l & Occupational Affairs, State Board of Nursing*, 146 A.3d 310, 316 (Pa. Cmwlth. 2016), *aff'd*, 173 A.3d 656 (Pa. 2017). Accordingly, this Court often applies the rule of lenity to construe such statutes against the government based on

---

[12] We note that Department represented at argument before us that the Denial was not a lifetime ban. This representation is inconsistent with the Department's stance in *Perrotta I*, common pleas' findings of facts in the present appeal, and the Department Panel's notes, which indicate "permanent denial." (May 29, 2018 Hearing, Department's Ex. C-1. *See also* FOF ¶ 1; *Perrotta I*, R.R. at 25a.) Accordingly, we proceed with the understanding that the Denial **permanently** denied Licensee's operating privileges.

[13] We recognize that professional licenses implicate the "inalienable right to engage in lawful employment," while driver's licenses are a privilege. *King v. Bureau of Prof'l & Occupational Affairs, State Bd. of Barber Examiners*, 195 A.3d 315, 324 (Pa. Cmwlth. 2018) (citation omitted).

13

principles of fairness to ensure that individuals are provided with "clear and unequivocal warning" about what actions expose them to liability and what the corresponding penalties may result. *Id.* (emphasis omitted) (quoting *Richards v. Pa. Bd. of Prob. & Parole*, 20 A.3d 596, 600 (Pa. Cmwlth. 2011)) (citing *Sondergaard v. Dep't of Transp., Bureau of Driver Licensing*, 65 A.3d 994 (Pa. Cmwlth. 2013)).

Further, in reviewing occupational license denials, this Court has been cognizant of mitigating circumstances that weigh against the imposition of such a serious penalty as license revocation. We explained this in *Benford v. State Real Estate Commission*, where a real estate sales' license was indefinitely revoked for the licensee's violations of the Real Estate Brokers License Act of 1929,[14] involving misrepresentation and bad faith in transactions. 300 A.2d 922, 923-24 (Pa. Cmwlth. 1973). There, the complaining party, a real estate broker, alleged that the licensee, a salesperson, had willfully misrepresented himself as a broker and negotiated an agreement of sale for property that was among complainant's accounts without the complainant's knowledge. The State Real Estate Commission (Commission) found the licensee had committed these violations and revoked the license for an indefinite period. The licensee argued that the Commission abused its discretion in the penalty it imposed.

This Court concluded that an indefinite revocation of a real estate sales license was too severe of a penalty where "the evidence [was] not so gross as to warrant a **permanent** deprivation of the license which is appellant's source of

---

[14] Act of May 1, 1929, P.L. 1216, *as amended*, 63 P.S. §§ 431-448. The Real Estate Brokers License Act was repealed and replaced by the Real Estate Licensing and Registration Act, Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §§ 455.101–455.902.

livelihood." *Id.* at 925 (emphasis added). Our determination was based, not "on sympathy for a wrongdoer, but on certain factors that, while not excusing the violation, do mitigate it." *Id.* For instance, we noted that the complainant sought to withdraw the complaint after learning information that caused him to believe the licensee had not willfully misrepresented himself. We also acknowledged the evidence showed that the licensee worked independently of the complainant when negotiating sales, and this was done by mutual agreement. *Id.* While these mitigating circumstances did not excuse the licensee's actions, they indicated the licensee had not willfully misrepresented his title. *Id.* at 926. Thus, although the Commission might have been justified in **suspending** the licensee's license, we found that it abused its discretion by **revoking** it. *Id.*

We applied this analysis in a case involving the Bureau of Occupational Affairs, State Board of Accountancy (Board) and a permanent revocation of a licensee's Certified Public Accounting (CPA) license. *Ake v. Bureau of Prof'l & Occupational Affairs, State Bd. of Accountancy*, 974 A.2d 514, 522 (Pa. Cmwlth. 2009). In *Ake*, the Board permanently revoked the licensee's CPA credentials based upon the licensee's conviction for the felony of a hate crime in Illinois. *Id.* at 516-18. The licensee argued to this Court that the Board abused its discretion by imposing the maximum penalty. We agreed, acknowledging that while the Board had grounds to impose a sanction, it "abused its discretion by imposing the most drastic available sanction." *Id.* at 522. In part, we reasoned that a complete revocation "should be a sanction reserved for the worst offenders," like the licensee in *Goldberger v. State Board of Accountancy*, 833 A.2d 815 (Pa. Cmwlth. 2003), who "prepare[d] an audit report that falsely inflated a company's net earnings." *Ake*, 974 A.2d at 522. Pertinent to our decision in *Ake* was that the

15

licensee had presented mitigating evidence that his conviction in Illinois was an isolated incident and remote in time from the licensee's application to reactivate his CPA license. *Id.* at 519-20. Further, looking to the language of the relevant section of the CPA Law,[15] this Court noted that the provision was intended as a penalty for the "types of misconduct that are anathema to the accounting profession," of which the licensee's convicted conduct was not. *Id.* at 520. Finally, to the extent that rehabilitation was a relevant factor for the Board's consideration, this Court concluded that the licensee was rehabilitated after serving the sentence for his conviction, complying with the terms of his parole, and apologizing for his actions. *Id.* at 521. Given this, we vacated the Board's order revoking the licensee's CPA license. *Id.* at 522.

### d. Lifetime Revocations of Driver's Licenses

This Court has also emphasized the serious nature of a lifetime revocation in the context of commercial driver's licenses (CDLs) under the Uniform Commercial Driver's License Act (CDL Act).[16] In *Sondergaard*, the licensee appealed a notice from the Department that he was permanently disqualified from operating a commercial vehicle after his second conviction for DUI. The licensee's arguments on appeal related to the interpretation of Section 1611(c) of the CDL Act, 75 Pa. C.S. § 1611(c), which requires the Department to disqualify for life any person convicted of two or more violations of an offense relating to DUI where the person was a commercial driver at the time the violation occurred. Ultimately, while this Court found the statute unambiguous, and thus did not apply

---

[15] Act of May 26, 1947, P.L. 318, *as amended*, 63 P.S. §§ 9.1-9.16b.
[16] 75 Pa. C.S. §§ 1601-1622.

the rule of lenity, we did find the lifetime disqualification to be penal in nature. Although acknowledging that "operating a motor vehicle is a privilege, not a right," we also noted how the lifetime disqualification under Section 1611(c) had ramifications on a commercial driver's ability to work. *Sondergaard*, 65 A.3d at 997. Specifically, a lifetime disqualification meant that commercial drivers "do not lose the privilege to operate a motor vehicle; instead [they] lose the right to practice their chosen profession," and licenses to practice professions are protected property interests. *Id.* (citing *Alexander v. Dep't of Transp., Bureau of Driver Licensing*, 880 A.2d 552, 561 (Pa. 2005); *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 20-21 (Pa. Cmwlth. 2012)). "The severity of this sanction transforms what is a remedial law in the context of a one[-]year disqualification[] into a penal law," we explained. *Id.*

Our Supreme Court reviewed a similar provision, Section 1611(e) of the CDL Act, 75 Pa. C.S. § 1611(e), to determine if it violated a licensee's substantive due process rights or constituted cruel and unusual punishment. *Shoul v. Dep't of Transp., Bureau of Driver Licensing*, 173 A.3d 669 (Pa. 2017). Section 1611(e) of the Vehicle Code imposes a lifetime disqualification from driving a commercial vehicle after a commercial driver is convicted of using a motor vehicle in the commission of any felony involving controlled substances. 75 Pa. C.S. § 1611(e). The Supreme Court ultimately concluded that Section 1611(e) did not violate the licensee's substantive due process because it served a legitimate government purpose. *Shoul*, 173 A.3d at 677. The Supreme Court nonetheless found that Section 1611(e) was not rationally related to protecting highway safety. *Id.* at 680. Specifically, the Supreme Court determined that "Section 1611(e)'s imposition of a

17

**lifetime** disqualification undermines its rational relationship to promoting highway safety." *Id.* at 681 (emphasis in original). The Supreme Court explained

> Section 1611(e) stands out as the sole provision imposing a lifetime disqualification from holding a CDL that may never be lifted, while holders of CDLs who commit traffic violations, drive under the influence of alcohol and/or drugs, or even cause negligent homicides – all plainly more dangerous, injurious, or fatal to motorists – are subject to significantly shorter-term disqualifications.

*Id.* at 680. Further, even repeat offenders under other subsections of Section 1611 could seek exceptions from or reductions of possible lifetime disqualifications. As such, the Supreme Court reasoned that a lifetime penalty under Section 1611(e) "fail[ed] to account for persons' inherent potential for rehabilitation," which made that penalty "unreasonable" or "unduly oppressive." *Id.* at 681.[17] Because Section 1611(e) did not account for the potential for rehabilitation, the corresponding penalty of a lifetime disqualification undermined Section 1611(e)'s relationship to highway safety. To that end, the Supreme Court further explained:

> Section 1611(e) operates on a principle that one's use of a motor vehicle to deliver a controlled substance not only poses such a risk to highway safety as to justify the disqualification of [the] right to hold a CDL, but also an irrefutable legislative determination that he will **always** pose such a risk to highway safety as to justify the same.

---

[17] We note that, while Section 1611(c) and (d) specifically provide for the consideration of mitigating circumstances prior to a lifetime disqualification in limited circumstances, Section 1611(e) does not. Section 1611(c) and (d) provide that where a person is convicted of two or more enumerated offenses the Department shall disqualify that person for life, but nonetheless "may issue regulations establishing guidelines . . . under which [that] disqualification for life . . . may be reduced to a period of not less than ten years." 75 Pa. C.S. § 1611(c), (d). No specific provision for mitigation exists with regard to Section 1611(e), the provision at issue in *Shoul*, nor did the Supreme Court consider the mitigation provisions in its analysis of Section 1611(e). Section 1611(e), like Section 1503(a)(8), does not expressly provide for consideration of mitigating circumstances prior to imposing the penalty.

18

*Id.* (emphasis omitted).

### e. Legal Principles for Permanent License Denial

From these cases, a legal framework emerges. First, a driver's license is a privilege and not a right. *Sondergaard*, 65 A.3d at 997. Nonetheless, a permanent revocation or denial of a license is the most severe sanction a licensing agency can issue. As this Court has acknowledged, a licensing body can abuse its discretion by imposing the most drastic penalty available for a violation of licensing laws and regulations. *Ake*, 974 A.2d at 522. When determining the appropriateness of a sanction, mitigating factors should be considered. *Benford*, 300 A.2d at 925. Mitigating factors may include the licensee's rehabilitation and remoteness in time from the violations in question. *Ake*, 974 A.2d at 520. Further, the nature of the conduct underlying the violations in question must be considered in relation to the purpose of the lifetime ban and the conduct it seeks to deter. *Shoul*, 173 A.3d at 680-81.

### f. The Department's Permanent Denial of Licensee

We apply these legal principles to this case in which the Department has imposed the most drastic sanction available: permanent denial of a driver's license. The Department's primary argument focuses on Section 1503(a)(8) and its language requiring a denial for repeated Chapter 15 violations. The Department reasons that because Licensee had two Chapter 15 violations, he repeatedly violated Chapter 15 and should be permanently denied. As such, the Department appears to assert that Section 1503(a)(8) is not ambiguous. However, Section 1503(a)(8) does not give "clear unequivocal warning" that two repeated violations

may result in a lifetime ban. *McGrath*, 146 A.3d at 316; *see also* Section 1928 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1928 (requiring that penal provisions be construed strictly). Given this, we find Section 1503(a)(8) to be ambiguous and penal and apply the rule of lenity to strictly construe Section 1503(a)(8) in our analysis of whether the Department met its burden before common pleas to justify the Denial.

The Department provides little justification beyond vague reference to public safety and security for why a lifetime ban is appropriate in Licensee's case other than the existence of two violations. Based on the principles above, that alone is not sufficient to justify a lifetime ban. In reviewing a permanent denial, we look, not at just the quantity of the violations, but also at the type of violation and any mitigating circumstances. That is what common pleas did here. Given the severity of the sanction, common pleas, during its de novo review of the Department's action, properly considered the mitigating evidence that the Department should have examined in the first instance. Common pleas then concluded that, as a matter of law, the Department did not meet its burden of showing Licensee's act of obtaining two false licenses years ago justified denying him a license for the rest of his life. *See Ake*, 974 A.2d at 520; *Benford*, 300 A.2d at 925. Similar to this Court's analysis in *Ake*, common pleas found that Licensee's violations for the false licenses were remote in time, that Licensee had served his sentence, and that Licensee had shown rehabilitation through completing eight years of parole without violations. Further, as we did in *Benford*, common pleas acknowledged testimony at the hearing as to Licensee's circumstances, which did not excuse his violations but mitigated them. 300 A.2d at 925-26. Specifically, common pleas found that Licensee had not used the false

20

licenses to obtain welfare benefits or credit cards, but procured them as a means to continue working to support his family. While Licensee's violations for the false licenses likely **justified his suspensions**, given the mitigating circumstances, they **did not justify a lifetime ban**. *Id.* at 926.

As in *Ake*, we consider the intent underlying the penalty for these false licenses. There, we concluded that the penalty was intended for the "types of misconduct that are anathema to the accounting profession." *Ake*, 974 A.2d at 520. Here, the Department contends that individuals who obtain false licenses pose a risk to national security, public safety of fellow drivers, and the integrity of the licensing system on the whole. Individuals who have had more than one false license "should not be on the road," in the Department's view. (Department's Br. at 14.) Because Licensee has obtained two false licenses, the Department asserts he poses a risk to safety and should be permanently denied. We find the Department's argument to be unsustainable, as it is reminiscent of the arguments rejected by the Supreme Court in *Shoul*. As in *Shoul*, the Department's argument here operates on the principle that obtaining more than one false driver's license "not only poses such a risk to highway safety as to justify the disqualification of [Licensee's] right to hold [a license], but also an irrefutable . . . determination that [Licensee] will **always** pose such a risk to highway safety as to justify the same." 173 A.3d at 681. The Department's argument here, as in *Shoul*, "fails to account for [Licensee's] inherent potential for rehabilitation," *id.*, and is contrary to the facts as found by common pleas.

Common pleas found that Licensee completed alcohol and drug rehabilitation, has not consumed drugs or alcohol since his incarceration, and served eight years of parole without violating its terms or conditions. (FOF ¶ 50.)

21

Additionally, Licensee's last Vehicle Code violation occurred in 2006. (*Id.* ¶ 38.) Common pleas also concluded that Licensee "demonstrated his willingness to comply with the restrictions placed on his license." (Rule 1925(a) Op. at 26.) Moreover, given common pleas' findings regarding Licensee's rehabilitation, the Department's goal of using Section 1503(a)(8) to deter Licensee from obtaining false licenses in the future is not served.

Finally, as common pleas stated in this case, and the Supreme Court did in *Shoul*, we find it important that other provisions of the Vehicle Code provide the opportunity for reapplication and restoration of an individual's license after convictions for offenses that also pose a serious threat to public safety. Under Section 1554 of the Vehicle Code, an individual may be eligible for a probationary license after serving the requisite term of suspension or revocation for up to **22** of any of the offenses enumerated in Sections 1532, 1539, and 1543 of the Vehicle Code, which include aggravated assault by vehicle while DUI, accidents involving personal injury, and reckless driving. These offenses pose a significant and direct threat to public safety, yet the Vehicle Code allows for individuals with such violations to demonstrate rehabilitation and apply for a probationary license. The action of obtaining a false license, while unlawful, does not invariably pose the same type of threat as the above offenses.

In summary, Licensee admits he violated the law when he obtained the two false licenses. Licensee's unlawful actions for the false licenses are remote in time, and the Department has not shown that Licensee currently presents a threat to the integrity of the licensing system or public safety, or that his conduct of obtaining two false licenses otherwise requires such a severe sanction. We do not minimize the severity of Licensee's unlawful conduct. Rather, we agree with

22

common pleas that the Department has not met its burden of proving that the conduct in question warrants the lifetime ban issued by the Department. In essence, common pleas concluded, as a matter of law, that these mitigating factors weighed against the imposition of the most serious penalty the Department could impose. As discussed, there is substantial evidence to support the facts upon which this conclusion is based. Therefore, common pleas did not err in granting Licensee's appeal because the Department did not meet its burden to permanently deny Licensee's operating privileges under Section 1503(a)(8).

### g. Remedy

In its Order granting Licensee's appeal, as a remedy common pleas ordered the Department to remove from Licensee's driving status the designation of suspended, revoked, or expired, display Licensee's driving status as restored, accept Licensee's applications for an ignition interlock and learner's permit, and grant the license upon payment of costs. However, common pleas was limited to ordering the Department to perform its "ministerial duty"; it was without authority to order the Department to "exercise its judgment or discretion in a particular way." *Bright v. Pa. Bd. of Prob. & Parole*, 831 A.2d 775, 777 (Pa. Cmwlth. 2003). Here, Department has a ministerial duty to **process** Licensee's applications, but cannot be compelled to **grant** the license. Therefore, we order the Department to process Licensee's applications in accordance with its regulations and procedures in light of our decision that the Department has not met its burden under Section 1503(a)(8).[18]

---

[18] We do not address the Department's argument that common pleas erred in finding that the Department denied Licensee due process. As noted in our opinion reinstating the automatic **(Footnote continued on next page…)**

## III. Conclusion

Common pleas did not err as a matter of law when it granted Licensee's appeal of the Denial; thus, we affirm in part on those grounds and do not address whether the Department violated Licensee's due process rights. The Department did not meet its burden to permanently deny Licensee a driver's license pursuant to Section 1503(a)(8). However, common pleas' Order, to the extent it directed the Department to grant a license to Licensee, is vacated. Instead, the Department is ordered to process Licensee's applications and documentation he submitted in compliance with the Restoration Letters according to the Department's governing regulations and procedures in light of the foregoing opinion.

_____
**RENÉE COHN JUBELIRER,** Judge

_____

**(continued…)**

supersedeas, because "the common pleas court heard the matter de novo and made its own findings of fact and conclusions of law, it would appear probable that the de novo hearing cured any procedural due process defect occurring at the administrative level." *Perrotta II*, slip op. at 4; *see also Dep't of Transp., Bureau of Traffic Safety v. Quinlan*, 408 A.2d 173, 175 (Pa. Cmwlth. 1979). Nonetheless, the lack of written procedure governing Department hearings under Section 1503(a)(8) and the Department's position that these hearings are not subject to its administrative practice regulations is troubling, particularly given the potential of a lifetime ban on operating privileges.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Anthony Perrotta         :
                             :
         v.          :     No. 1122 C.D. 2018
                             :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing,      :
               Appellant   :

## O R D E R

**NOW**, August 14, 2019, the Order of the Court of Common Pleas of Delaware County (common pleas) is **AFFIRMED** to the extent that it granted Mark Anthony Perrotta's (Licensee) appeal because the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) did not meet its burden. Common pleas' Order directing the Department to grant Licensee a license is otherwise **VACATED.** The Department shall process Licensee's applications for license restoration in compliance with its governing regulations and procedures in light of the foregoing opinion that the Department has not met its burden to proceed under Section 1503(a)(8) of the Vehicle Code, 75 Pa. C.S. § 1503(a)(8).

                                       _____

                                       **RENÉE COHN JUBELIRER,** Judge